**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 21-CR-117 (TFH)** |
| | : | |
| | : | |
| **ALEX HARKRIDER** | : | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**MOTION TO REVOKE ORDER OF DETENTION OF U.S. MAGISTRATE JUDGE**
**AND TO MODIFY BOND CONDITIONS**

Detention of criminal defendants awaiting trial should be the exception, not the rule. The government contends that because Mr. Harkrider texted one person before he came to DC saying he would bring a " freedom blaster", drove to DC with guns in his truck, walked around Black Lives Matter (hereinafter "BLM") Plaza "looking for a confrontation", passed an OC Cannister through the crowd at the Capitol, was among a group of protesters trying to gain entrance to the Capitol, carried a tomahawk with him to the Capitol, and was seen standing outside a window of the Capitol for a few seconds, that this qualifies him for detention under the Bail Reform Act. Yet the government does not identify any concrete, articulable threat or danger posed by Mr. Harkrider by these actions because they cannot. The government has repeatedly, inaccurately represented what happened on January 6, 2021 at the United States Capitol.

Evidence cited by the government

In support of their motion for detention, the government relies on evidence presented months ago at a detention hearing in the Eastern District of Texas before a Federal Magistrate Judge. To date, they have not found any additional evidence to support their claims that Mr. Harkrider should be detained pending trial. The still shots in the detention memo and reply are

1

just that: still shots. They do not capture the entirety of what Mr. Harkrider's actual actions were during the January 6, 2021 riot.

Argument

"Detention cannot be based on a finding that the defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness or risk of flight; otherwise the scope of detention would extend beyond the limits set by Congress." *United States v. Munchel*, 2021 U.S. App. LEXIS 8810, at *17 (D.C. Cir. March 26, 2021). Rather, "[t]he crux of the constitutional justification for preventative detention under the Bail Reform Act is that, '[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, . . . a court may disable the arrestee from executing that threat.'" *Id.* at *13 (*quoting United States v. Salerno*, 481 U.S. 739, 751 (1987)). "Thus, a defendant's detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety." *Id*. at *11. The Magistrate Judge's decision to detain Mr. Harkrider came two months before the D.C. Circuit's decision in *Munchel*. Nor did that Magistrate have the thoughtful decisions by Chief Judge Howell in *Chrestman* and Judge Bates in *United States v. Klien,* 21-CR-236,(JDB). Even so, the Magistrate Judge in Texas did not explain how there were no conditions of release that would assure defendant's presence at trial or assure that he would not be a danger to the community. There was no discussion of house arrest, third party custodian, gps monitoring or any combination of conditions. *See* Transcript, Ex. 2, P. 73-74.

Mr. Harkrider is not a man prone to violence and is not a danger to the community as is evidenced by the BWC footage, his behavior before, during and after his arrest, and the proffered

testimony at the detention hearing. As Mr. Harkrider exercised his right to protest, he never had any physical contact with law enforcement officers and never yelled at officers. The government's assertion that  he "went out the night before looking for a confrontation" is not supported by any evidence. He is not seen confronting anyone and there is no evidence he intended to do anything but see D.C.-a place he had never been. In fact, a careful reading of the government's brief reveals that a statement "believed to be Harkrider's" is heard saying "there's going to be a fucking war tomorrow."  Gov't Opp. P. 4.  Even if it was Mr. Harkrider's voice, which we do not concede, merely saying something does not make a person violent.  And the government fails to show what is nefarious about walking with a group of people and wearing a t-shirt that says "Marine. Noun. A person who kills shit you can't."1 And the government's assertion that because Mr. Harkrider served in Iraq and Afghanistan and suffered from PTSD because of it makes him more of a danger to the community is not only absurd, it's offensive. That they are treating someone who repeatedly risked his life and did what his commander in chief asked him to do at the Ellipse Park as a dangerous criminal is shameful.

Unfortunately, when making his findings on the record,  it is believed that the Magistrate Judge was not given any videos to look at before he made his decision to detain Mr. Harkrider and if he had, he would have concluded that his behavior does not pose any identifiable threat. All reports and evidence indicate that when Mr. Harkrider was arrested by police and his home searched,  he was more than cooperative and compliant-he was actually helpful.  When they asked about the tomahawk, he gave it to them.  There was no attempt or intent by Mr. Harkrider

---

1 Presumably the government believes the t-shirt worn by Mr. Harkrider is some sort of threat. In fact, the Supreme Court held that Slogans on t-shirts are an exercise of free speech, even if offensive. *See Cohen v. California*, 403 U.S. 15 (1971)( holding that  a display on a t-shirt of "fuck the draft" in the Los Angeles courthouse cannot be criminalized, especially since it was not targeted at any particular individual.

to cover up any conduct or otherwise evade law enforcement.

The government argues that Mr. Harkrider engaged in pre-planning with others before coming to DC. He planned with a friend, and this is not the type of preplanning that Chief Judge Howell discussed in *United States v. Chrestman*, 21-mj-218 (BAH), 2021 WL 765662, at 7-9 (D.D.C. Feb. 26, 2021). Her discussion and decision centered around pre-planning with several members of the Proud Boys. They also argue Mr. Harkrider "forced entry" into the capitol but there is absolutely no evidence to support this. The BWC shows him behind a group of others. Their attempt to bolster its assertion that Mr. Harkrider poses a danger based on the severity of the conduct with which he is alleged to have committed is also unpersuasive. Here, the government merely reiterates its prior proffers to the Court. The passing of the cannister is described as if Mr. Harkrider personally brought the cannister and was sharing it with others. A review of the BWC shows it being passed through the crowd and it appears that Mr. Harkrider did not even look up at what he was passing. The government conveniently neglects to describe the scene immediately preceding and after . Mr. Harkrider is never depicted in any BWC engaging in any violence. He does not break anything or hit anyone or even attempt to do so.

The government also argues that Mr. Harkrider is a person that can't follow orders of this Court because of his prior military service stating his behavior is "wholly inconsistent with the oath he took as a member of the U.S. military." *See* Gov't response at p. 15. However, [d]etention cannot be based on a finding that the defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness or risk of flight; otherwise the scope of detention would extend beyond the limits set by Congress." *Munch*el at 17. The government also used this argument before Judge Bates in *United States v. Federico Klein,* ( 21-cr-236) and Judge Bates wholesale rejected this claim stating "it is less clear that his now former employment at

the State Department heightens his "prospective" threat to the community," citing *Munchel*, 2021 WL 1149196, at *4.                    .

Thus, the  Magistrate Judge's finding of detention is not consistent with *Munchel*. *Munchel* requires a finding of an articulated and identifiable threat. Here, there is none.  The government has not articulated what they fear  the defendant will do. And even if they had identified one, it would have to be presented to this court by "clear and convincing" evidence that an actual threat existed.  *See Salerno*, 481 U.S. 739, 751 (1987). Just because he believes that his congressmen have betrayed him (he's not alone in this) does not mean he is in any way a danger to his community. The narrative the government depicts is not accurate. Mr. Harkrider has been in custody for over three months in multiple prison facilities without incident. What the government fails to tell this Court is that the evidence they have in their possession belies their claim of having a weapon that is illegal to have in the District of Columbia. *See* 22 D.C. Code Section 4514. The evidence from Mr. Harkrider's phone and computer show that he googled the legality of what kind of weapon he could legally carry in the District of Columbia, and that is a blade of 3 inches or less, which is what this tomahawk had-a blade of three inches. And the penalty for this in the District of Columbia is punishment of one year or less. *See* 22 D.C. Code Section 4515.2

Critically, the government has not been consistent on which defendants they believe should be detained and which defendants should get bond. In several other cases before this Court where defendants activity on January 6th was much more violent, the government did not

---

2 Undersigned counsel understands that the D.C. Code may not apply in the Federal Courts, but when one googles the legality of blades that can be possessed in D.C., one looks to the D.C. Code for direction.

ask for detention. In *USA v. Robert Sanford*, 21 CR 86 (PLF), where the defendant is alleged to have hurled a fire extinguisher at officers and hit someone in the head, yet he was given a bond. In *USA v. Chad Jones,* 21 CR 213(RJL), the defendant was filmed using a flagpole to break down the door leading to the Speaker's lobby, yet the government did not ask for detention. In *USA v. Gossjankowski* , 21 CR 123 (PLF), the defendant was observed actively using a taser on a police officer, is charged with using a deadly weapon, and was given a bond.  And in *USA v. Leffingwell,* 21 CR 5 (ABJ), the defendant was seen pushing past a wall of officers and punching an officer repeatedly in an effort to break past the officers and he was released.

Conclusion

Mr. Harkrider's behavior at the Capitol was an isolated incident and unlike any previous or subsequent behavior. The government has completely overreached and exaggerated the facts in an attempt to bolster their claim that detention is appropriate. *Munchel* unequivocally requires that if no threat is identified and articulated, the defendant must be released.  And here there is no allegation that Mr. Harkrider was or is planning any future violent act. *Munchel* also requires that this Court consider the context of the case. Not only is the context of January 6, 2021, important to consider, but the 9 months preceding it  due to the pandemic has been one of isolation, loneliness and thus sadness for millions of Americans. One could say this was the perfect storm leading up to January 6, 2021.

The government has failed to articulate a specific concrete, identifiable threat to the community posed by Mr. Harkrider. A combination of conditions that were proposed when Mr. Harkrider was initially detained  would assure this Court of the safety of the community and his presence at trial and he should be released.

Respectfully submitted,

6

KIRA ANNE WEST


By:    _____/s/_____
Kira Anne West
DC Bar No. 993523
712  H Street N.E., Unit  509
Washington, D.C.  20002
Phone:  202-236-2042
kiraannewest@gmail.com
Attorney for Mr.  Harkrider


**CERTIFICATE OF SERVICE**

I hereby certify on the 25th day of April, 2021, a copy of same was delivered to the

parties of record, by email  pursuant to the Covid standing order and the  rules of the Clerk of

Court.


_____/S/_____

Kira Anne West