UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,          .
                                   .
            Plaintiff,             .   CR No. 21-0117 (TFH)
                                   .
      v.                           .
                                   .
01 RYAN TAYLOR NICHOLS,            .   Washington, D.C.
02 ALEX KIRK HARKRIDER,            .   Thursday, July 21, 2022
                                   .   2:06 p.m.
            Defendants.            .
. . . . . . . . . . . . . . . . . .

TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE THOMAS F. HOGAN
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES</u>:

For the Government:         DOUGLAS B. BRASHER, AUSA
                            U.S. Attorney's Office
                            Northern District of Texas
                            1100 Commerce Street
                            Third Floor
                            Dallas, TX 75242
                            (214) 659-8604

For Defendant Nichols:      JOSEPH D. MCBRIDE, ESQ.
                            The McBride Law Firm, PLLC
                            99 Park Avenue
                            25th Floor
                            New York, NY 10016
                            (917) 757-9537

For Defendant Harkrider:    KIRA A. WEST, ESQ.
                            Law Office of Kira West
                            712 H Street NE
                            Unit 509
                            Washington, DC 20002
                            (202) 236-2042

Court Reporter:             BRYAN A. WAYNE, RPR, CRR
                            U.S. Courthouse, Room 4704-A
                            333 Constitution Avenue NW
                            Washington, DC 20001
                            (202) 354-3186

```
 1                    P R O C E E D I N G S,
 2                   (Via Videoconference)
 3          THE DEPUTY CLERK:  This is criminal matter 21-117,
 4   United States of America versus Ryan Nichols, Defendant 1,
 5   and Alex Harkrider, Defendant 2.
 6       Counsel, please identify yourselves for the record,
 7   beginning with the government.
 8          MR. BRASHER:  Good afternoon, Your Honor.
 9   Doug Brasher for the government.
10          THE COURT:  Good afternoon, Mr. Brasher.
11          MR. MCBRIDE:  Good afternoon, Your Honor.
12   Joseph McBride for Ryan Nichols.
13          THE COURT:  Thank you, Mr. McBride.
14          MS. WEST:  Good afternoon, Your Honor.  Kira Anne West
15   for Alex Harkrider, and along with me is Nicole Cubbage,
16   another Texas lawyer.  She is actually functioning as a
17   paralegal for me on this case, with A.J.'s blessing.
18          THE COURT:  All right.  Thank you.  I appreciate that.
19       Mr. Harkrider and Mr. Nichols, you can see and hear us all
20   right?
21          DEFENDANT NICHOLS:  Yes, Your Honor.
22          DEFENDANT HARKRIDER:  Yes, Your Honor.  I can.
23          THE COURT:  Okay.  Thank you both.  This is a video
24   hearing pursuant to the CARES Act still in these matters.
25   Eventually, we're going to have to be in person to get to
```

1    the final stage of this case.

2         At this time we have several matters pending we need

3    to discuss and concerns we have that have been raised by

4    Mr. McBride with his problems.  Ms. West has proceeded to

5    file her motions timely and an extension to file some

6    additional ones, and we obviously have the trial date that

7    we put in some months ago after a continuance of the first

8    trial date on Mr. McBride's request.

9         I think the first thing to talk about, really, to see where

10   we're going in this case -- I've also, by the way, received a

11   request by Mr. Harkrider on a bond request that we'll take up

12   later, but I think the first thing is we really have to talk

13   about the serious matters.

14        Mr. McBride has come in with a motion filed a couple of

15   minutes after midnight, the deadline for an extension of

16   time to file motions, and then has indicated in that motion,

17   because of the illness problems with Lyme disease and COVID

18   earlier, that he may seek a continuance of the trial date as

19   well.  I have severe concerns about that.  I know he has four

20   other cases or so here.  One judge has given him a continuance

21   to a December trial date.  I am booked through December

22   already in other trials that are going to go forward.

23        Mr. Harkrider's been in prison since January 2021 -- sorry.

24   Mr. Nichols has been in prison since January of 2021, and that

25   concerns me.  He deserves a trial, a prompt trial, speedy

1    trial.  We extended the speedy trial time under the rulings of

2    the chief judge and the CARES Act, but that's going to expire

3    and we have to be careful that we try him in a timely fashion.

4        Additionally, we had set the trial date here -- obviously,

5    some months ago -- at the request of Mr. McBride, who had

6    requested a continuance of the earlier trial date that we had

7    back in March, and so then in March we set this second trial

8    date.  And if you look at the transcript, I said it's set in

9    stone.  At that point, Mr. McBride didn't know he had COVID,

10   had Lyme disease.  But we need to talk about that, what we can

11   do about that.

12       So, Mr. McBride, you're going to have to give me some more

13   background and medical history, probably a medical report to

14   understand this.  I understood from friends that had Lyme

15   disease that they get tired, but they take an antibiotic that

16   seems to keep it somewhat under control.  You've indicated a

17   lot of other treatments, a lot of specialists you're going to

18   be seeing outside the area, and I don't know what that's all

19   about and why it necessitates a continuance of the trial and

20   not filing any motions.

21       I mean, you've had the notice to file these motions since

22   we did the pretrial order in March, before you got COVID and

23   before you got diagnosed with Lyme disease.  So I gotta hear

24   from you why we need all this time and what's the necessity

25   for it and why we can't get to trial as scheduled.

1          MR. MCBRIDE:  Understood.  Thank you, Your Honor

2     for allowing me to speak today on behalf of my client,

3     Ryan Nichols.  With regard to the Lyme disease, there's really

4     two types of ways you have to deal with it.  If you first

5     understand that were bitten by a tick, you have an acute Lyme

6     infection that's normally demonstrated what's called a

7     bull's-eye rash, you have about 35 days to take antibiotics

8     for them to make a meaningful contribution to your health.

9          Once the Lyme's disease disseminates, goes into the

10     bloodstream, it becomes a little more difficult to treat

11     and/or even detect.  It's my understanding -- I'm no doctor,

12     but I've spoken to several doctors at this point, and I

13     actually have an appointment later on today with a specialist,

14     the chief specialist, with regard to my medical team.

15          My understanding is that I've been living with it for

16     quite some time but that the intersection between having COVID

17     two times and Lyme's disease has made the Lyme's disease more

18     prevalent, and it's affecting me differently than it has in

19     the past.

20          To make a long story short, just to put it in my own terms,

21     the two bouts of COVID, it took me a long time to recover from

22     each one.  I'm still not fully recovered from the second bout

23     and to boost my immune system to where the Lyme became active

24     and detectible.  So it's there and needs to be treated, and

25     since I've had it for some time -- I don't know how many

1    years -- the treatment options are very different.

2        I've spoken to numerous people here over the past several

3    weeks about what the best plan is.  I do believe I have a good

4    plan in place.  I've already started executing that plan as of

5    the 7th this month.  My doctors have told me that I should be,

6    you know, near to up and running at a normal rate, or possibly

7    even better than from where I was before, in two to three

8    months.

9        So I am -- Judge, as you know, Your Honor, a federal

10   criminal trial is an all-or-nothing endeavor, especially one

11   of this magnitude.  The way I see it, this is sort of like a

12   title fight, and I'm potentially the prizefighter here who's

13   been injured in training; and likewise, I need to focus on

14   getting better before I hop back in the ring.  I think it's

15   the responsible thing to do, to let the Court know what's

16   going on.

17           THE COURT:  You had since March to file any motions.

18           MR. MCBRIDE:  Sure.

19           THE COURT:  Had COVID sometime in May.  Apparently,

20   you had it before that.  You hadn't said anything about having

21   had COVID twice before.

22           MR. MCBRIDE:  I had it 2020, Your Honor, was the first

23   time.

24           THE COURT:  That's a couple years ago.

25       But the motions due date was several months in advance,

1    since July 18th.  You filed July 18th with this notice that

2    you can't do anything, including haven't been able to do any

3    of the motions, and I don't know what delayed the motions you

4    could have been working on since March or earlier since you

5    started representing Mr. Nichols.

6            MR. MCBRIDE:  I understand.

7            THE COURT:  And knew what the problems were, I assume.

8    I'm really disturbed about this.  I understand your health

9    condition, but let me ask you about other activities.  Were

10   you down here the last couple of weekends or anything working

11   on the case, doing anything?

12           MR. MCBRIDE:  Of course.  Of course.  I believe I

13   seen Mr. Nichols -- the last time I saw him was within the

14   last week or so.  So, Your Honor, if I may, given my medical

15   history -- actually, the first time I had COVID was March of

16   '21, so I do apologize.

17       With regard to our reasons for taking our time with the

18   motions, it's simple.  We've been drinking discovery through

19   a firehose here.  There's tons and tons of discovery that come

20   out on a regular basis.  Some of these discovery dumps have

21   several terabytes of information.  We have to work our way

22   through material in a meaningful way.

23       Your Honor, I've made several records in this court about

24   Mr. Nichols' lack of access to his discovery at the jail.

25   Your Honor, over the past -- during the past two adjournments,

the past two status hearings, you agreed that Mr. Nichols
should have access to the Relativity.com database in jail,
despite that reality he's never been granted access.  Not
only has he not been granted access, he has on multiple
occasions, including the entire month of May and for the past
approximately 10 days right now, been denied his access to the
tablets altogether.  So there is a long history of the jail --

THE COURT:  You had mentioned earlier, though, on
June 10th, that you were going to file for relief from this
including a protective order, maybe a habeas petition.
Obviously, that wasn't done about these problems.

But I just hesitate -- I must tell you, to change the
trial date I put in stone, we're booked through December every
single day in trials, and it's going to then get to two years
since Mr. Nichols was arrested and been in prison awaiting a
trial.  That's the longest I've ever had, in 40 years on the
bench, having somebody waiting for trial.

And Ms. West has as many clients that you have before the
court and has been able to manage and get the motions work
done, and I think the minimum I'm going to have to have is
a full medical report from a certified physician as to your
health situation and why you can't work on this case in the
next -- this is July 21st.  The trial date is not till
November 1.  So you've got September, October -- August,
September, October.  You've got three and a half months -- not

1    quite -- three months and a week to prepare for trial, and

2    your medical condition is supposed to be improved by then.

3    I just don't see the basis for this long an extension of a

4    trial as well as the motions.

5              MR. MCBRIDE:  So, Your Honor, with regard to the

6    distinction between myself and Ms. West, obviously Mr. Nichols

7    is incarcerated at this time, which there's been several

8    obstacles to us being able to work on his case.

9        With all due respect, Your Honor, I am an officer of the

10   court.  I would not be making representations to you here

11   unless I thought it was just and proper and in the best

12   interest with respect to the Court's calendar.  I have no

13   problem providing medical records to the Court under seal.

14   I have no -- I don't want to share the contents of my medical

15   records with the general public.  That is for certain.

16       With regard to the habeas petition, it's going to happen.

17   I guarantee you you'll have it within the next two weeks.

18   I got hit with this news about my health condition sometime

19   in the past 30 days, and I have been doing everything within

20   my power to address it in the most reasonable and expeditious

21   way possible.

22       I am not saying that I am -- I can't anticipate -- I'm

23   a 44 year-old man; I've never really been sick in my life.

24   Sure, I've had COVID, but I've never had a serious health

25   issue like this in my life.  So I don't know what to anticipate.

I'm only going on what could be reasonably foreseeable.  It
could turn out a month from now I feel great; it could turn
out a month from now I don't feel great.

I'm just letting you know this is the situation because
I have a deep and profound respect for this court, for Your
Honor, and you obviously weigh the facts according to how you
deem necessary and best.  I just feel it incumbent upon myself
to make as strong a record as possible just in case I got
myself into a situation in October and I was having some type
of complications with my treatment.

THE COURT:  Do you have other counsel in your firm that
can assist you at all?

MR. MCBRIDE:  Yes, I do.

THE COURT:  Or paralegals?

MR. MCBRIDE:  Well, not for lead counsel at this
time; but I have recently brought on more people, and I
feel confident that I will be able to try Mr. Nichols' case.
I also do believe that I have a duty toward myself and my
family to prioritize my health as well, and in balancing these
two equities, I believe that one adjournment is a reasonable
ask considering this unforeseen circumstance.

THE COURT:  All right.  I'll think about it.  I don't
want to continue the trial.  I may give you some time to file
motions and would, for Mr. Harkrider, stay with the present
motions hearing dates and the present due dates of those

1    motions and the government's response to those motions, but

2    I'll look at whether or not we can squeeze some more time

3    for you to file motions that can be heard in a timely fashion

4    before trial and resolve before trial and still do the

5    pretrial in a timely fashion.  I'll think about that.

6        DEFENDANT NICHOLS:  Your Honor, may I address the

7    Court on these issues?

8        THE COURT:  In one second.

9        DEFENDANT NICHOLS:  Yes, sir.

10        THE COURT:  I have also considered that Mr. McBride

11    doesn't want to file his medical records, and I appreciate

12    that.  I don't think he should file them.  What I asked for,

13    and it could be filed under seal, is a medical report from

14    his treating physician as to the situation, as to his regimen,

15    and as to the effect of this disease upon his ability to

16    practice law to further consider a continuance of the trial

17    if necessary.

18      So, Mr. Nichols, you had something for me?

19        MR. MCBRIDE:  Your Honor, before Mr. Nichols speaks,

20    I'd just like to raise one additional point.  There is a

21    change-of-venue motion that was filed in this case.  I'm

22    largely going to adopt it, the motion filed by Ms. West, a

23    very good motion, I should add.

24      I just want to make a record that, at our last appearance,

25    we spoke about the January 6th Committee's hearings and the

1    potential poisoning of the jury pool beyond repair.  Your

2    Honor spoke about the Watergate cases, and of course the

3    Oliver North in relationship -- the Oliver North cases in

4    relation to our concerns.

5        I just wanted to point out that, at the very next hearing,

6    which was about two or three days after our court appearance,

7    the January 6th Committee put Ryan Nichols' video up on

8    national TV during the hearing, and the way that the committee

9    framed it was that if Mr. Nichols was leading an angry lynch

10   mob down the street to attack politicians, absent any

11   opportunity to present a defense or cross-examine witnesses.

12   This is obviously extremely damaging and prejudicial, and

13   it has, in our opinion, all but eviscerated a fair trial in

14   this country, never mind D.C.

15       So I feel it incumbent upon myself to make a record about

16   the committee's continuing effect on Mr. Nichols' case and

17   January 6th cases at large.  But the fact that they actually

18   played a video of him and the way that they made it look, I'm

19   just not sure if we're going to be able to overcome that type

20   of prejudice, and I will of course put that in my motion that

21   you'll have within the next 14 days.

22           THE COURT:  Okay.  That is appropriate, and that's

23   fine.  I raised it earlier.  A couple of judges already

24   considered it.  I considered Mr. Nichols in particular,

25   obviously, being on the screen.  But I've considered the

1   effect and have felt it could be ameliorated by an appropriate

2   voir dire.  If the case is in November, as we anticipated

3   going forward, I think that'll be separated by some months

4   away from this exposure, and we certainly can ask every single

5   potential juror did they watch the hearings and did they see

6   anything about any individual in particular.

7        But I appreciate it, and I anticipated the motion in

8   any event.

9            MR. MCBRIDE:  Judge, with respect to the voir dire,

10  I just -- our position -- I'll just make a record now.  Our

11  position is going to be that anybody who saw or who watched

12  these January 6th trials [sic], that because of the one-sided

13  narrative, because of the level of production, because of

14  the level of animus towards these people, that's simply not

15  something that can be cured.  It's going to be our position

16  that anybody who saw these hearings is just not fit to be a

17  juror.

18           THE COURT:  All right.  I appreciate that position.

19       Mr. Nichols, do you want to talk to the Court?

20           DEFENDANT NICHOLS:  Yes, Your Honor.  I just wanted

21  to say that, on top of my attorney's Lyme disease, which I

22  understand completely, I originally asked for the extension

23  of the trial because I didn't have access to all the discovery,

24  and we talked about that two status hearings ago.  That was

25  90 to 100 days ago, and we've made record of that twice.

1    You agreed that I needed to get access to that.  The jail

2    gives us access to Evidence.com, and I guess that was set

3    up between the government and the jail.  They still haven't

4    given me Relatively.

5       So at least that 90 to 100 days I need back, because I need

6    to be able to go through Relativity because there's different

7    evidence inside of there that's relative to my case than I have

8    access to.  So I don't have access to Relativity.com.

9    I still don't have access to my discovery that they took back in

10   November.  The government said a couple status hearings ago --

11   it was the other AUSA -- that all the evidence was uploaded.

12      But we got a new download of evidence on Evidence.com on

13   May 31st, a ton of new videos.  And so all the evidence wasn't

14   on Evidence.com like the government told us.  That wasn't done

15   until May 31st.  I didn't have access to Evidence.com for the

16   entire month of May.  They took that down here at the jail,

17   so all of May I didn't have access to Evidence.com.

18      Back in December we talked about informants, federal agents

19   being in the crowd.  And I know that there was a comment made

20   about not bringing conspiracy theories into the court.  Within

21   the last two weeks that's been proven true, that there was in

22   fact informants embedded with the Proud Boys that went in and

23   did nefarious acts inside of the Capitol.  That's true.  I would

24   like more time to discover that.

25      I'd also like the government to answer my motion about agent

1       provocateurs in the crowd.  That took 18 total months

2       to come out.  The January 6th hearings played my video right

3       there and made it look like I was terrorist No. 1 headed down

4       to the Capitol to do things that never happened.

5           We also agreed last status hearing that that was an issue and

6       that that shouldn't have happened.  There was also video,

7       Your Honor, that they played inside the January 6th hearings

8       that the government never made available to anybody, any of the

9       defendants here in the jail.

10          So if the January 6th hearing committee is getting discovery

11      that we don't have access to, what more do they have that we

12      don't have access to that could possibly exonerate me?  Because

13      I've already found exculpatory evidence on body cam video.

14              THE COURT:  All right.  There's a lot of conspiracy

15      theories and a lot of theories you have, and we'll see what

16      evidence is produced that you have.  I don't know what about

17      other evidence you're worried about that people have that you

18      think may be exculpatory, but there are tens of thousands, I

19      assume, of videos of other people in the riot not connected

20      to you and not showing where you were that are out there.

21      How it's relevant to your case, I'm not sure that I see that.

22              DEFENDANT NICHOLS:  I will say, Your Honor, they played

23      evidence that was -- under the protective hearing that was

24      directly officers that were around us and they videotaped

25      us at the January 6th hearing.  So this was a sensitive and

1    highly sensitive video.

2         THE COURT:  Let me ask Mr. Brasher does he have

3    anything else in discovery that he hasn't produced that he

4    thinks is relevant listening to Mr. Nichols.  Government?

5         MR. BRASHER:  I'm not sure I understood the question.

6    Is the question --

7         THE COURT:  Mr. Nichols has raised that there are

8    certain matters that are relevant in discovery that have not

9    been produced, and I'm asking are you aware of that and what

10   is the situation as far as you know about it.

11        MR. BRASHER:  I am not aware of any evidence that the

12   government has that is relevant to Mr. Nichols, exculpatory

13   or inculpatory, that has not been produced.  If there is a

14   specific item that the defense can point me to, I can look

15   into that, but I am not aware of any such evidence.

16        THE COURT:  Mr. Nichols, I'll leave it up to your lawyer

17   to file whatever he thinks is appropriate, but I must say,

18   we're not going to deal a lot in theories and conspiracy ideas

19   about what happened or not without actual facts to show it.

20        MR. MCBRIDE:  Your Honor, if I may?

21        THE COURT:  I'm going to do as follows in this case

22   to move this along at this time:  I'm going to give you some

23   more time to file motions.  I'm not continuing the trial date

24   without further evidence of your inability to adequately

25   prepare and try the case as scheduled on November 1.

1       The motions were due, obviously, on July 18, and on

2   midnight of that day, actually two minutes after midnight,

3   we got a motion to continue with the time frame for filing

4   the motions.  So I'm going to give you some time to file

5   additional motions you wish to file.

6       You've indicated you're going to adopt one of the motions

7   that Ms. West has already filed on venue with the ideas you

8   have as to the prejudice to the jury by these January 6

9   Committee hearings, another which is tonight, for the record.

10      So, instead of filing July 18, I gave Ms. West to August

11  1st to file additional motions, but I'll give you more time

12  than that and I'm going to change your motions date.  I'll

13  keep the pretrial motions date of August 25th and 26th.  We

14  can discuss reducing that to one day for Ms. West to hear her

15  hearings and be issued then; but I'll give you time, and we'll

16  have to set a separate date for your motions to be heard.

17      So if I give you -- let me look at the calendar when I can

18  do a hearing.  I was going to be away, but I'm just going to

19  cancel being away, and I'll be here to handle this case.  I

20  can do the 18th of July.  Today's the 23rd -- or 21st of July.

21      All right.  I'm going to give you three weeks from today,

22  extension to file your motions based upon your request that

23  you hadn't been able to do them because of your illness,

24  although you had months to do them.  So August 11th they'll

25  be due.  And I'll give the government -- I don't know,

1    Mr. Brasher, your calendar down in Texas and what you're up

2    to.  You need 10 days, two weeks?  What do you need to file

3    an answer?

4         MR. BRASHER:  I will be in trial on August 16th in

5    another matter here in D.C., so that's my only thing I need

6    to work around.

7         THE COURT:  All right.  And is that a three- or

8    four-day trial, a five-day?  Do you know what it is?

9         MR. BRASHER:  It's starting on the Tuesday of that

10    week.  But it's a bench trial, so I hope we'll be done by

11    that Friday.

12         THE COURT:  All right.  I'll give you two weeks,

13    to the 25th of August, to file a response.  All right?

14         MR. BRASHER:  That works.

15         THE COURT:  All right.  And let's go to September

16    for a hearing.

17         MS. WEST:  Your Honor, may I just interject?

18         THE COURT:  Yes.

19         MS. WEST:  This is Ms. West.  Right now -- I think

20    this is right.  I have on my calendar that we have motions

21    hearings August 25th and 26th.  So I assume the Court would

22    vacate those hearings.

23         THE COURT:  No.  I just said, for you, we're going to

24    go ahead and get those done.

25         MS. WEST:  Okay.  Okay.

1      THE COURT:  We're getting yours done.  Mr. Harkrider

2  is going forward, and we'll just do Mr. Nichols' hearing in

3  September, to get those done and then try to get ready for the

4  trial.

5      MS. WEST:  Yes, sir.  Thank you.

6      THE COURT:  All right.  So if it's at issue on the

7  25th or so, and if Mr. McBride wants to file a short response

8  immediately thereafter, we can do that.  Let's look about --

9  how about Thursday the 8th of September for Mr. McBride to

10  have a hearing on the pending motions?

11      MR. MCBRIDE:  Yes, Your Honor.  We'll make it work.

12      THE COURT:  I want to see if Mr. Brasher is available

13  then or not.

14      MR. BRASHER:  Yes.  That works for the government.

15      THE COURT:  All right.  We'll do a motions hearing on

16  the 8th of September at 10 a.m., and I believe we should do

17  them in person.

18    On Mr. Harkrider's motions, I'd like it in person.  Maybe

19  he can attend if he wishes by video, and Ms. West could be

20  here arguing.  If he can travel here, that's fine.

21      MS. WEST:  I think Zoom would be good, Your Honor,

22  but I'll be there in person, Ms. Cubbage and I.

23      THE COURT:  All right.  The government also has

24  motions since Mr. McBride hadn't responded to those yet,

25  and Ms. West, I don't think, has yet either.

So I think we'll hold those and do those on the 8th as well, the government's motions.  That'll give Mr. McBride time to respond to those as well.  And I think you respond the same schedule we've given him, and Ms. West can respond on that schedule to the government's motions so I have enough time to look at those.  And I'll put this in writing, make sure we understand where we are in this.  But the upshot is as follows:

I'm granting the extension for Mr. McBride to file the motions deadline that I had scheduled back on March 25th until the date I've given in August 25th -- the 25th, and the government's response -- no, that's the government's response the 25th.  The government's response is the 25th.

Let me go back on the dates here.  Yeah, August 11th for Mr. McBride's motions, the government's response the 25th.  And Mr. McBride, if he wishes to file any brief response to those, would have to do that by the 18th of August.

I'll hold the motions hearing on the 25th of August for Mr. Harkrider's motions, the government's, and then we'll hold a hearing for Mr. Nichols on his motions at 10 a.m. on September 8th, and we'll have the government's motions argued as well that day.  Ms. West can attend and argue those on her behalf as well.  And if I have another date I need to put in there for any other responses, I'll look at it, but I think that covers them.

And I'm going to deny the motions at this time on the

1      motion to continue -- suggestion of the motion to continue

2      trial, and Mr. McBride may file, if he wishes, a medical

3      report from his treating physician, under seal, to keep us

4      on track of what's happening and where he is at this point.

5          All right.  We've got the motion for leave for

6      Mr. Harkrider to travel during his bond matters.  He's on

7      home confinement.  And the government has indicated through

8      Ms. West -- and I haven't heard directly yet because she

9      just filed it today.  The government wants a few more days to

10     respond to that and then I'll treat it, or what do they want

11     to do?

12         MR. BRASHER:  Your Honor, I spoke with Ms. West this

13     morning about it, but I think our position is accurately laid

14     out in her response.  My understanding is this is a social

15     visit or some sort of vacation.  We'd be opposed to travel for

16     that purpose.  But as the Court knows, we've not been opposed

17     to other volunteer-type work travel that Mr. Harkrider's been

18     involved in.  So we see that as a distinction that has

19     meaning.  And if the Court would like additional briefing on

20     it, we can submit it, but I think there's not much I can add.

21         THE COURT:  No, that's fine.

22         Ms. West, what about this?  Other judges have denied

23     vacation requests in these cases, and I think that's

24     appropriate for these types of charges.  Mr. Harkrider's been

25     very good on his bond.  He's traveled extensively and been

 1   back after doing his work, but this is a bit different

 2   situation.

 3        MS. WEST:  Your Honor, I think that some judges have

 4   allowed vacations and other judges have not.  I wouldn't term

 5   this as a vacation.  I would term this, as I said in my

 6   motion, a social visit.

 7      Mr. Harkrider, unlike all the other defendants that judges

 8   have denied vacation or granted vacation, is in a different

 9   position because of his medical history and because of the

10   time that he served in Iraq and Afghanistan.

11      Mr. Harkrider is not asking to go to Fort Myers Beach for

12   four days to vacation.  He's asking to go see friends that he

13   served with.  And without divulging client confidences, the

14   reason being is to support each other in their mutual issues

15   having served for our country.

16      So that's why I think the Court can make this a different

17   exception, because I know the Court is concerned, and also

18   Mr. Harkrider has been, as the Court just noted, so good since

19   he's been released.

20      So we believe that because he's been so good for so long

21   that it's not an unusual or big request.  And the Pretrial

22   Services officers who have responsibility, here and in Texas,

23   are not opposed to it.  So that's why we believe -- it's a

24   short trip, Your Honor, four days.  And so that's why we're

25   respectfully asking for him to be allowed this travel.

1          THE COURT:  Do you have information where he's

2     going and where he's staying, just so he can be located?

3          MS. WEST:  I do, Your Honor.  I have all of that.

4     And as I have in the past, I will give that to Ms. Pullman

5     so that she can confirm it and speak to whomever is there.

6     I have all of that information; I just didn't want to put

7     it on the public record.

8          THE COURT:  Oh, I understand that.  That's all right.

9       All right.  I'm going to, over the government's opposition,

10    finding it's not a vacation, really, as getting together with

11    his co-veterans he served with in the war, as I understand the

12    representation, in Iraq or Afghanistan, to see them and sort

13    of work on their issues together.

14      I will allow it as long as it's approved by the Pretrial

15    Services officers and there's a full accounting of where he'll

16    be and how he's going and when he's getting back, and when he

17    gets back he immediately reports in.  All right?

18         MS. WEST:  I have one other issue, Your Honor, not

19    with regard to this motion.  I am scheduled to be out of town

20    September 8, so I don't know if I can appear for that hearing

21    via Zoom?  Until I see the government motions and know what I

22    have to argue, I'm not sure that that won't be taken care of

23    on our hearing on the 25th of August.  I'd ask permission to

24    appear by Zoom.

25         THE COURT:  All right.  That's fine.  If you can --

1    the government's filed its motion, so unless they come with

2    new ones, they have them already filed, in limine motions,

3    etc.  Some don't affect your client.

4          MS. WEST:  Right.

5          THE COURT:  They've been filed.  So if there's anything

6    you need, you can look at that.  It may be you don't need to

7    appear to argue it, but I will certainly allow you.

8          MS. WEST:  I really appreciate that, Your Honor.

9    My schedule is just getting moved around all over the place,

10   and I just hate to give that up.

11         THE COURT:  I understand exactly.  I'm in the same shoes.

12         MS. WEST:  Yeah.

13         THE COURT:  Okay.  Well, that's the schedule I'll

14   accept now, and we'll put it in writing today and get it out

15   to everybody so they know about it.  And we're going to be

16   back on the dates we set, and we're going to preserve the

17   trial date.

18      And if Mr. McBride wishes, he can submit a medical report

19   from his treating physician about his situation, his ability

20   to do his work, and hopefully, if he has other lawyers to help

21   him, it would benefit the client in moving this case forward

22   to resolution.

23      All right.  Thank you, counsel.  I appreciate your

24   appearing today.  See you all at the next hearing.

25         (Proceedings adjourned at 2:42 p.m.)

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify

that the foregoing pages are a correct transcript from the

record of proceedings in the above-entitled matter. *

*/s/ Bryan A. Wayne*
Bryan A. Wayne

* PLEASE NOTE:

This hearing was taken via videoconference in compliance
with U.S. District Court standing order(s) during the COVID-
19 pandemic.  Transcript accuracy may be affected by the use
of electronic technology, including but not limited to sound
distortion or audiovisual interference.