1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

2        _____

3    United States of America,       )  Criminal Action
                                     )  No. 1:21-cr-00117-TFH
4                    Plaintiff,      )
                                     )  **Status Conference** (via
5    vs.                             )  Zoom)
                                     )
6    Ryan Taylor Nichols, et al.     )  Washington, D.C.
                                     )  **March 24, 2022**
7                   Defendants.      )  Time:  11:30 a.m.

8        _____

**Transcript of Status Conference** (via Zoom)
**Held Before**
**The Honorable Thomas F. Hogan** (via Zoom)
**United States Senior District Judge**

11

A P P E A R A N C E S

12

For the Government:        **Luke M. Jones**
(via Zoom)                 UNITED STATES ATTORNEY'S OFFICE
                           FOR THE DISTRICT OF COLUMBIA
                           555 Fourth Street, Northwest
                           Washington, D.C. 20001

                           **Douglas B. Brasher**
                           UNITED STATES ATTORNEY'S OFFICE
                           Northern District of Texas
                           1100 Commerce Street, Third Floor
                           Dallas, Texas 75242

For the Defendant Ryan Taylor Nichols:
(via Zoom)                 **Joseph D. McBride**
                           THE MCBRIDE LAW FIRM, PLLC
                           99 Park Avenue, 25th Floor
                           New York, New York 10016

For the Defendant Alex Kirk Harrider:
(via Zoom)                 **Kira Anne West**
                           LAW OFFICE OF KIRA WEST
                           712 H Street, Northeast, Unit 509
                           Washington, D.C. 20002

1  _____

2  Stenographic Official Court Reporter:
   (via Zoom)                    Nancy J. Meyer
3                                Registered Diplomate Reporter
                                 Certified Realtime Reporter
4                                333 Constitution Avenue, Northwest
                                 Washington, D.C. 20001
5                                202-354-3118

6  _____

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

(REPORTER'S NOTE:  This hearing was held during the COVID-19 pandemic restrictions and is subject to the limitations of technology associated with the use of technology, including but not limited to telephone and video signal interference, static, signal interruptions, and other restrictions and limitations associated with remote court reporting via telephone, speakerphone, and/or videoconferencing.)

THE COURTROOM DEPUTY:  This is Criminal Case 21-117, United States of America v. Ryan Taylor Nichols, as Defendant 1, and Alex Kirk Harkrider, as Defendant 2.

Counsel, please identify yourself for the record, beginning with the government.

MR. JONES:  Good morning, Your Honor.  Luke Jones for the United States, joined by AUSA Doug Brasher, who's joining the case for the government.

MR. BRASHER:  Good morning, Your Honor.

THE COURT:  Good morning to both of you.

MR. MCBRIDE:  Good morning, Your Honor.  This is Joseph McBride on behalf of Mr. Nichols.

THE COURT:  All right.  Thank you, Mr. McBride.  Good morning.  Good to see you.

DEFENDANT NICHOLS:  Good morning, Your Honor.

THE COURT:  Mr. Nichols, you can see and hear us all right?

DEFENDANT NICHOLS:  Yes, sir, I can see and hear you just fine.

1     THE COURT:  You look like you got a trim.

2     DEFENDANT NICHOLS:  Yes, sir, I did.

3     THE COURT:  All right.  Ms. West.

4     MS. WEST:  Good morning again, Your Honor.  Kira Anne

5  West for Mr. Alex Harkrider.

6     We're appearing via videoconference Zoom pursuant to the

7  CARES Act.

8     THE COURT:  All right.  Thank you.

9     Mr. Harkrider, you can see and hear us all right?

10     DEFENDANT HARKRIDER:  Yes, Your Honor, I can hear you

11  all right.  Can you hear me?

12     THE COURT:  All right.  Thank you.  Yes, we can.  I

13  appreciate that.

14     This is a Zoom hearing pursuant to the CARES Act.  So

15  everyone is appearing by consent to do this by Zoom.  And it's

16  a status call in light of the upcoming motions and trial --

17  pretrial and trial dates we have.  So we want to be brought up

18  to date where the parties are and make sure we're proceeding to

19  get to trial if it cannot be resolved before trial.

20     So I'll hear from counsel for the government first,

21  Mr. Jones or Mr. Brasher, as to their position, whether you

22  need more time, and talk to each defense counsel.

23     MR. JONES:  Thank you, Your Honor.

24     We were last before Your Honor on January 21st when we

25  set out the schedule.  From the government's perspective,

1   we're -- we're on pace.  The only pending motion, I believe, is

2   Ms. West's motion to move the motions hearing date back a

3   couple weeks in light of other court obligations she has, which

4   the government didn't oppose.

5         I should note, however, although we hadn't spoken to

6   Mr. Nichols's counsel since the 21st, he did reach out two days

7   ago and, among other things, raised a request to push back the

8   dates by 60 days in this case.

9         The government -- you know, the government recognizes

10  the Court's set the July date, in part, because Mr. Nichols is

11  detained.  Obviously, Mr. Harkrider can speak for himself -- or

12  his counsel can.  You know, we -- we think the timetable is

13  workable to go to trial in July.  You know, that being said,

14  you know, we're here at the government's pleasure.  We

15  generally don't want to push defendants' trial if they can't be

16  ready.

17        And, you know, we understand that Mr. McBride will make

18  a motion when he has an opportunity to speak.  Our position, as

19  we said to him, was that as -- as long as the defense concedes

20  that the delay is not caused by the government, that is -- it's

21  needed to prepare for trial, you know, we would not be in a

22  position to oppose a continuance.  But, you know, we believe,

23  given the facts of the case, discovery that's been provided,

24  you know, obviously demonstrated that these cases can go to

25  trial, as a couple already have, and I think we'd be able to do

1     that.  But I'll let Mr. McBride speak to that.

2              THE COURT:  All right.

3              MR. JONES:  He did raise a -- I'm sorry.

4              THE COURT:  Go ahead.  Any discovery issues that have

5     come up or anything like that?

6              MR. JONES:  So -- I guess not from the government's

7     perspective, although Mr. McBride indicated two days ago

8     that -- two things.  One, discovery with respect to

9     Mr. Nichols's access at the jail.  Again, you know, we weren't

10    aware of the particular issues.  But Mr. McBride indicated that

11    discovery had been confiscated from Mr. Nichols in November and

12    not returned.

13             We haven't had a chance to get in touch with the jail

14    officials between the other day and this morning, although we

15    did reach out.  I have a difficult time believing that

16    discovery was being withheld from Mr. Nichols, but I don't know

17    what's been submitted or provided to the Court -- to the jail

18    for him to review.

19             Separately, Mr. Nichols -- or Mr. McBride indicated

20    that, I think, the attorneys are seeking additional time to

21    review materials that are made available through the global

22    discovery productions.  Those had come online in the fall in

23    the evidence.com instance and in January in the Relativity

24    database.  You know -- again, you know, from the government's

25    perspective, you know, given the discovery we've provided in

1    this case we'll -- we believe we're prepared to go forward on

2    the current schedule without any prejudice to the defense.

3         And as to the facts of the case, the detention hearing

4    itself, you know, that was, essentially, the government's case,

5    not to -- not revealing any secrets as to what -- what this

6    trial is going to look like.  You know, most of the evidence

7    is -- if not all of the evidence -- is -- is on video; much of

8    it coming from the devices of the defendant, particularly

9    Mr. Nichols.

10        So all that said, you know, it's not in the government's

11   interest to go to trial against a defendant who's not ready to

12   go to trial.  Mr. Nichols is the one who's detained in this

13   case.  And so, you know, if it's a legitimate request for a

14   continuance, we're not going to be in a position to oppose that

15   because we want the case tried fairly.

16        But that -- that's -- that's our status update,

17   Your Honor.  I'm happy to answer any questions you may have.

18             THE COURT:  All right.  Thank you for that review.

19        I'm very concerned about Mr. Nichols being held without

20   bond and not getting to a reasonable trial date.  He has a

21   right to get to trial, and that's why we put the trial in as we

22   did, trying to get it to be a fairly early trial.  We've had

23   one nonjury trial, we've had one jury trial, and resulting in

24   both guilty verdicts.  One nonjury trial, there was one not

25   guilty verdict of disorderly conduct charge.  But the rest was

1    found guilty of the other charges.

2         And there are other trials set, I know, coming up in the

3    next couple of months, several trials.  And I know Ms. West has

4    a trial set.

5         All right.  Let me hear about this -- concerns and

6    problems.  I'm worried about it because, as I said, I really

7    want to get it to trial and get this resolved.  I don't think

8    the evidence is all that complicated.  The government

9    indicated, basically, its evidence was shown at the detention

10   hearing.  And so that would be a fairly straightforward matter

11   for the jury to consider.  And if the case is not going to

12   resolve, we'll have to get a trial and get it done.

13        So let me hear from Mr. McBride first and his concerns,

14   and then we'll see what we'll do.

15             MR. MCBRIDE:  Thank you, Your Honor.

16        As the Court is very much aware, Mr. Nichols has the

17   right to meaningfully participate in his defense, as per the

18   Sixth Amendment of the United States Constitution.

19        We have since the inception of this case waived time in

20   order to facilitate the Department of Justice's great burden of

21   facilitating discovery in this case, a process which as it

22   stands today has not yet been complete.

23        The Department of Justice has been on record many times,

24   since the inception of this case and all other January 6th

25   cases, stating the fact that this is the biggest investigation

1    in its history, in its storied history, because of the sheer

2    volume of material.  In particular, electronic material.  Now

3    that the discovery has been made available through various

4    means, we are drinking through a fire hose in terms of volume,

5    and we need to be able to parse through the discovery in a way

6    that makes sense for us.

7           Additionally, most importantly, Your Honor, there are

8    long-standing problems with discovery access at the D.C. jail.

9    Mr. Nichols, for instance, had a laptop that he had access to

10   the hard drive that I had dropped off at the jail on

11   November -- on -- on September 23rd of 2021.  At some point for

12   reasons unbeknownst to us, both the laptop and the hard drive

13   were taken from him.  I made a record about this during his

14   December 20th bail hearing.

15          The discovery on the hard drive was never returned.

16   Specifically, regarding the confiscation of the discovery,

17   there was an officer, Sergeant Franklin, who confiscated it and

18   said this was happening on behalf of Ms. Davis in litigation.

19   This happened while we were smack dead in the middle of

20   preparing for the December 20th bond hearing.  We took it in

21   stride since time was of the essence, and we moved on.  But

22   it's important to note that Mr. Nichols has not had his hard

23   drive since.

24          With regard to the evidence.com database, Your Honor,

25   evidence.com is a database that includes, basically, all the

1    video and all of the audio evidence in this case.  It is

2    massive.  It is like trying to paddle through an ocean.  It

3    takes time to learn the system.  It takes time to be able to

4    parse through that massive database and to figure out what --

5    how we can use it in a way that works for us.  Mr. Nichols has

6    only been granted access to that database at the jail some time

7    in the past 45 days or so.

8         Moreover, there is also -- let me just say this as well.

9    To be fair, with regard to discovery in -- in Mr. Nichols's

10   case, in all January 6th cases, none of this is par for the

11   course.  You know, there are very -- there were various points

12   of intersection between the USAfx database, the evidence.com,

13   and Relativity databases, in conjunction with their relative

14   inadequacies, their respective glitches, their need for

15   licensing for all users.  And there is a great deal of

16   confusion in discovery with regard to even using those systems

17   on our end.

18        You know, it might seem very easy to the Department of

19   Justice because they're rolling out the notices, or it might be

20   easier for somebody who's working at one of the big -- big

21   institutional defenders who have this institutional backbone to

22   support them.  But for us small practitioners, these -- these

23   rollouts, these changes, often take a lot of work, a lot of

24   elbow grease, which -- which delay our ability to do other

25   things in these cases.  We're not -- I'm not looking to assign

1    blame here.  I'm simply stating a few of the system-related

2    reasons why we have arrived here today.

3         And regarding the Relativity database, Your Honor, this

4    is a database which allows its users to cross-reference data

5    with evidence.com and to access evidence.com in a more

6    intelligent way.  At this time, Mr. Nichols is prohibited from

7    having access to the Relativity database.  We can't wrap our

8    mind around why that could possibly be, especially since --

9    given the fact that we have waived so much time in this case in

10   order for discovery to be proffered to us in a meaningful way.

11   Because of that, it's our position that Mr. Nichols should have

12   access to his discovery in the most intelligent way possible,

13   as often as possible, in order to participate in his defense in

14   the most meaningful way possible.

15        So because we have waived time on multiple occasions in

16   consideration of the DOG [sic] -- DO- -- the Department of

17   Justice's needs, because the interests of justice works for

18   both us and them, because the discovery process is not yet

19   concluded with any reasonable degree of certainty, and because

20   we -- we do have a constitutional obligation to make sure that

21   Mr. Nichols can participate in his defense in the most

22   meaningful way possible, we are asking for a one-time 60-day

23   continuance in this case to give us the opportunity to, number

24   one, use the systems that we were recently licensed for and,

25   number two, give Mr. an opportunity -- Mr. Nichols an

1    opportunity to use the Relativity database as well.

2           We will, of course, be waiving time because the request

3    is coming from us, but we do believe that this is paramount

4    given the overall difficulty to access discovery in this case.

5           THE COURT:  Well, let me ask you.  You have several

6    defendants in this January 6th matter.

7           MR. MCBRIDE:  (Nods head.)

8           THE COURT:  And the -- the overall bulk production

9    we're talking about beyond the individual production for

10   Mr. Nichols specifically that the government has already

11   supplied, you've had full access to for some time.  This

12   overall production, you want to review it as to Mr. Nichols's

13   further engagement in this that does not show up in the

14   government's exhibits; is that the idea?  I'm not sure the

15   relevance of getting all the information, these thousands of

16   hours of exhibits, and looking at them all of the overall riot,

17   how it relates to Mr. Nichols specifically.

18          MR. MCBRIDE:  Well, Your Honor, we have to sift -- so

19   we recently hired investigators in all of our cases.  The

20   investigators have to get licenses.  They require licenses in

21   order to use Relativity.  I just got my Relativity license last

22   week.  And in order for our investigators to go through the

23   Relativity database, they're going through it -- say in

24   Mr. Nichols's case, we have -- an investigator and myself and

25   Mr. Nichols, we're going through the discovery in the way that

1    applies to the facts of his case.

2         We are looking for -- in the video evidence, in the

3    massive amounts of file dumps, in the police reports, in the

4    Capitol Police investigation reports, we are looking for

5    evidence that supports the conclusion that Mr. Nichols was

6    primarily justified in attempting to use force that day.

7         We are also looking for other pieces of information that

8    support our ultimate conclusion that he is innocent and they

9    won't be able to prove their case beyond a reasonable doubt.

10   In order for us to do that, Your Honor, we have to go through

11   this video evidence.  Sometimes it's a video that's two, three

12   hours long or one hour long, and 30 seconds of that video is

13   what helps us or 30 seconds of that video could be what hurts

14   us.

15        We have to make sure that we have a full grip on the

16   available discovery, number one, so we don't lose at trial,

17   because the government has had unfettered access to the

18   discovery since the inception of this case.  And number two, we

19   want to make sure that we leave no stone unturned, within a

20   reasonable degree of certainty, to make sure that we have done

21   our due diligence on behalf of Mr. Nichols.

22             THE COURT:  All right.  Ms. West, where are you on

23   this case about getting ready for trial then?

24             MS. WEST:  Yes, Your Honor.  I'm -- I'm ready.  I

25   mean, I have a lot of work to do, but -- I have two January 6th

1    trials, felony cases, set for trial the first week in June and

2    the last week in June.  Both of those cases should take a week

3    or less to try.

4         But I feel like I have all the discovery.  There's a lot

5    more I can go through, just as Mr. McBride said.  I haven't

6    been through all the discovery that's on Relativity.  But I

7    don't know what the government's exhibits are, other than what

8    Mr. Jones just said; that their evidence would be likely what

9    we had in detention hearings.  And if that's the case, I could

10   be ready shortly.

11        THE COURT:  All right.  I appreciate that.

12        Mr. Nichols, your counsel is asking for a 60-day

13   continuance, a one-time continuance, that would take -- the

14   trial presently scheduled for July 25th, that would take it

15   into the September 25th range.  You're incarcerated, and you

16   have a right to a reasonably speedy trial.  We have had a lot

17   of delays because of the pandemic that haven't been avoided.

18   And that you got the discovery that your counsel wants you to

19   see, the large -- they call tranche, thousands and thousands of

20   hours of video of the overall riot, which may or may not be

21   relevant to you.  I don't know.  It's up to your counsel to

22   look at that and whether it's relevant to the issues at trial.

23        But it would require putting the trial off, and it would

24   not start September 25th because of another commitment.  It

25   would probably have to start in October.  So have you had a

1    chance to talk with your counsel about that?

2              DEFENDANT NICHOLS:  Yes, Your Honor, I have.  And may

3    I address the Court, Your Honor?

4              THE COURT:  If your counsel -- it's up to your

5    counsel whether you should do that or not.

6              MR. MCBRIDE:  I'm -- thank you, Your Honor.

7         Ryan, I'm confident in your ability to -- to speak your

8    mind, so.

9              THE COURT:  All right.  Go ahead, Mr. Nichols.

10              DEFENDANT NICHOLS:  Thank you, Mr. McBride.  Thank

11    you, Your Honor.

12         So far the government was allowed to continue my

13    pretrial detention for over a year now in the interests of

14    justice while awaiting to compile their discovery.  They were

15    allowed multiple continuances.  And only last month in

16    February did I have access to evidence.com discovery.  So I,

17    not my attorney, needs access to all the discovery.  If there

18    are multiple evidence platforms, I deserve access to all of

19    them in order to properly prepare my defense.  I don't feel

20    it's fair that I'm forced to go to trial if I'm not prepared

21    after we just allowed the government to have over a year of

22    continuances to file well over 23,000 videos, many videos of

23    which are multiple hours long.

24         So I understand my pretrial detention length is

25    concerning at this point, as we're now in Month 15.  That was

1    also a concern at Month 3 for me when the government continued

2    my pretrial detention in the interests of justice.  So justice

3    is supposed to work for all parties, not just one.  And I

4    thought in the interests of justice, I need and deserve more

5    time to adequately prepare my defense for trial with all

6    discovery made available to me in enough time to go through

7    that evidence.  As of now, I will not have had that time.

8                THE COURT:  All right.  The evidence we're really

9    talking about, the particular evidence the government said it's

10   going to introduce at trial, was primarily, I think, all it's

11   shown at the detention hearing.

12         There are, obviously, thousands of hours of the general

13   riot, of the hundreds and hundreds and hundreds of people

14   that -- that rioted that day.  There's now over 750 cases --

15   more than that -- pending in our court, but most of it is

16   overall evidence.  I have trouble seeing what the relevance

17   will be to try to use all the videos at trial.  I can

18   understand you want to see them to see if you're in there

19   somewhere else that the government hasn't produced yet.  But

20   that's a burden that I had hoped to have been accomplished by

21   now because the video has been produced.  But I'll consider

22   granting the continuance.

23         Ms. West will be ready, although Mr. Harkrider's on high

24   intensity supervision bond.  But it does bother me; I was ready

25   for trial.  I had cleared my calendar, and we had planned to go

1   forward.

2        Mr. McBride, I know, has other cases that are scheduled.

3   I assume you'll be ready to go to trial on those, but I don't

4   want any of the others to interfere with the new trial date if

5   I get it, if he has other continuances he's going to get from

6   other defendants.

7        So far in our trials, they have gone very quickly.  They

8   have not been complicated.  The evidence is fairly

9   straightforward, as the evidence is generally video evidence of

10  the defendants who are charged and what they did, and it's on

11  film.  It's not just witnesses only coming in to testify.

12       So I think the -- it's difficult to see the -- any

13  complexity of evidence in this case.  But I will grant that if

14  you and your counsel feel you have to look at all the videos to

15  see if you're anywhere in there or the now new program that's

16  available for you to link into the videos to more directly see

17  yourself, that you should have a chance to do that.

18            DEFENDANT NICHOLS:  Thank you, Your Honor.

19       And I will say that it wasn't until 13 full months of my

20  incarceration where I finally found body cam footage worn from

21  officers that I feel to be exculpatory evidence for me, and so

22  that's why I feel we need more time because I found what helps

23  me at trial.

24            THE COURT:  All right.

25            DEFENDANT NICHOLS:  Thank you, sir.

```
1          THE COURT:  Well, let's look at a calendar then, and
2     we'll reschedule these dates for the hearings and your
3     obligations.  Let's see.  So 60 days would have taken it to
4     September.  I'm fully booked in September already with matters.
5     And we'd have to do -- my September calendar is literally
6     blank [sic] -- I mean, I just can't put anything in.  I'd have
7     to do the motions hearings in August and -- and then get to the
8     trial date in October.  I'd probably do a pretrial in late
9     August and a second pretrial just early October before the
10    trial.
11         Ms. West, what's your calendar like in October?
12         MS. WEST:  Your Honor, my calendar in October is
13    good.  The first week is bad, the first weekend and week, but
14    after Columbus Day, I'm good to go.
15         THE COURT:  That's after the 10th?
16         MS. WEST:  Yes, sir.
17         THE COURT:  Mr. McBride?
18         MR. MCBRIDE:  Judge, the first few weeks of October I
19    am going to be on trial.  Is there a way -- I'm free all of
20    November.
21         THE COURT:  I'm going to have to -- when will you be
22    free from your trials in the later part of October?
23         MR. MCBRIDE:  So I would not be free until the last
24    week of October, Your Honor.  I am on trial at this point -- I
25    believe it's October 3rd or 4th in another January 6th matter,
```

1    but that is -- I am -- my schedule is free and clear after --

2    after that.  So I would anticipate that trial is probably going

3    to go two weeks.  It's a multi-defendant trial.

4         And then I'm going to need time to prepare for

5    Mr. Nichols's case.  This is why, respectfully, I think the

6    beginning of November, at least for us, is -- is -- makes

7    sense.

8         THE COURT:  Who's the judge in October you've got?

9         MR. MCBRIDE:  It's Judge McFadden, and that's in

10   Christopher Quaglin's case.  My co-counsel in this case is --

11   is also in trial in that case as well.

12        THE COURT:  All right.  Can we -- we can do a

13   pretrial then in the last week or so of October?

14        MR. MCBRIDE:  Sure.

15        THE COURT:  At least by the 31st of October.  And you

16   can prepare for that, and we can start the trial in November.

17        Ms. West, are you available in November?

18        MS. WEST:  I am, sir.

19        THE COURT:  I appreciate that.

20        MS. WEST:  It's hunting season, but we'll work around

21   that.

22        MR. MCBRIDE:  Sorry, Kira.

23        THE COURT:  All right.  All right.  Well, how about

24   we start November 1st?

25        MR. MCBRIDE:  Good day for us.

1          THE COURT:  I think in some churches that's All

2     Saints' Day, ironically.

3          MR. MCBRIDE:  Sure is.

4          THE COURT:  In any event, no -- is the government

5     available November 1st?

6          MR. JONES:  Just --

7          MR. BRASHER:  Yes, Your Honor, that would work for

8     us.

9          MR. JONES:  There you go.

10          THE COURT:  It's an awfully long continuance, and I

11     guarantee you, I'm going to chisel this in stone on my desk.

12     It won't move, hell or high water.  We'll go to trial if you

13     can't resolve it ahead of time.  I don't know if Mr. Harkrider

14     can resolve.  It seems to me, it's something we can get worked

15     out on either side.

16          November 1, then, is the official trial date in this

17     case.  And I will do a final pretrial the week of

18     November [sic] 24th, depending on your calendars.  The 24th

19     I've got a matter -- I don't know.  It looked like I had a

20     matter, but I don't see it in October.  We can do a pretrial a

21     week in advance.  We'll say the 25th will be the final

22     pretrial.  And then I'll back off on the sentencing -- on the

23     motions dates initially set and the initial pretrial

24     conference.  I'll provide dates for counsel, and if they're in

25     trial, we'll try to work around those for counsel to do it.

1     I'll set up the pretrial motions we had, including any

2     motions to suppress or motions *in limine*.  I'll provide dates

3     for those and see where counsel can be.  Maybe I'll do it

4     September, if counsel is not in trial in September.  But I'll

5     have to go through my calendar and set those up.  So I think

6     we'll try that and see if we can't get the motions scheduled

7     timely and get them decided and then get the pretrial done so

8     trial would be ready to go without any problems by

9     November 1st.

10     I think by November 1st we should have a very fine

11     indication of what's coming up at trial with the -- what the

12     evidence will be, all the witnesses on both sides, all the

13     exhibits on both sides done in advance, and either agreed to or

14     presented to me for argument under admissions.  And so the

15     trial, hopefully, will be very efficient.  So we'll work back

16     from the November 1st date and the final pretrial date to do

17     the motions.  I think we'll see if we can get those done.

18     All right.  I'm going to extend the speedy trial by the

19     motion of Defendant Nicholas and his own expression that he

20     understands the speedy trial rights but says he needs to see

21     these documents, and particularly the electronic discovery, the

22     videos of the overall riot that he can relate to; and as he

23     said, he believes he can find evidence that may be helpful to

24     his defense in these cases.  So I think he has a right to do

25     that.

1          So for those reasons, I think it's legitimate, and the

2     best interests of justice outweigh the interest of the

3     defendants in a speedy trial and the public because of the need

4     for the defendants to be able to review the evidence -- at

5     least Mr. Nichols, the position he's in, to prepare himself,

6     along with Mr. Harkrider -- for the trial and because of

7     Mr. McBride's trial schedule.  We'll put it off until

8     November 1st for trial, and then we'll work on the other dates

9     with counsel once I get a chance to review my calendar.

10         All right.  I'm disappointed, but I think it's in

11    fairness to Mr. Nichols that it has to be done.  The government

12    will have to plan for a trial then on November 1st.

13         Again, I think that we'll have a lot of experience by

14    then in other trials.  Counsel can watch those trials, the

15    defendants can, and see if there's a way that these cases can

16    be resolved before trial, because I think there will be more

17    experience for the parties to review as we go forward.

18         I think Ms. West has got a couple of trials.

19         MS. WEST:  Yes, sir, in June.

20         THE COURT:  Yeah.  All right.

21         All right.  Thank you, all, for appearing today, and

22    what I'll do is I'll set up another status call, probably in

23    60 days or so, to make sure we're on schedule and we have the

24    motions and calendar worked out for these hearings before

25    trial.

1       MS. WEST:  Your Honor, just for the record, I wanted

2   the Court to know that I spoke to Mr. Harkrider about his

3   speedy trial rights again, and he waives those rights and is

4   willing to waive them until our next hearing.

5       THE COURT:  All right.  I appreciate that.

6   Anything else from counsel?

7       MR. JONES:  Your Honor, I don't want to delay us much

8   further.

9   Mr. Nichols made some statements about his -- what he's

10  entitled to in discovery and the reasons for prior

11  continuances.  I think the record is clear on both counts for

12  the government's filings regarding discovery and, you know, the

13  reasons why our hearings have been continued, in part, because

14  Mr. Nichols switched attorneys, which I don't begrudge him at

15  all, but I just want to put on the record we dispute many of

16  those claims.  But, again, I don't think it's necessary for us

17  to get into the weeds on that now given the outcome today.

18  So thank you very much, Your Honor.

19      THE COURT:  All right.  Thank you, all.  I appreciate

20  it.  Get to work on it.  I'll try to get it ready to go.

21  November 1 is a sacrosanct date.

22  Thank you, Counsel.

23      (Proceedings were concluded at 12:03 p.m.)

24

25

1          CERTIFICATE OF OFFICIAL COURT REPORTER

2

3          I, Nancy J. Meyer, Registered Diplomate Reporter,

4   Certified Realtime Reporter, do hereby certify that the above

5   and foregoing constitutes a true and accurate transcript of my

6   stenograph notes and is a full, true, and complete transcript

7   of the proceedings to the best of my ability.

8

9                     Dated this 24th day of July, 2022.

10

11                     /s/ Nancy J. Meyer
                       Nancy J. Meyer
12                     Official Court Reporter
                       Registered Diplomate Reporter
13                     Certified Realtime Reporter
                       333 Constitution Avenue Northwest
14                     Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25