UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL ACTION NO. |
| | ) | |
| Plaintiff, | ) | 1:21-CR-117(TFH) |
| | ) | |
| v. | ) | |
| | ) | |
| Alex Kirk Harkrider, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT HARKRIDER'S OMNIBUS REPLY TO GOVERNMENT MOTIONS IN LIMINE

COMES NOW, Defendant, Harkrider, by undersigned counsel, and submits this Omnibus Reply to the Government's motions filed on July 18, 2022. (ECF 100-104). In response the defendant asserts the following:

1. Government's Motion in Limine to Preclude Self Defense (ECF 100) – Mr. Harkrider is not mentioned by the government in that motion and thus has no need to reply. However, Mr. Harkrider reserves the right to make a self-defense claim in the future if necessary. New video evidence has been given to defendant Harkrider, some as recently as this past week, that shows never before seen events on January 6th and Mr. Harkrider specifically. Mr. Harkrider cannot state what his defense will be at this time as discovery in this case has not be completed.

2. Government's Motion to Exclude Improper Character Evidence.(ECF 101) – Evidence of Mr. Harkrider's volunteer work in search and rescue and his past military service are relevant, not to show his general good character, but to show his state of mind on January 6, 2022 and his preparedness for a potential crisis situation that day involving conflict with counter-protesters. Indeed, Mr. Harkrider's past history of helping in

times of crisis, search and rescue, and combat in defense of our Country played heavily

on his desire to attend the rally that day and to offer or render aid to anyone that day that

needed it, including Capitol Police if necessary.   It is why he sought to protect officer

Michael Fanone when he was pulled into the crowd that day.  It is also why he brought

the  legal tomahawk with him that day.  His training in the military and the need to be

prepared to defend himself in case of an attack against him or others, informed his

decision to carry a legal weapon in to Washington, DC that day. This evidence is

essential to Mr. Harkrider's defense to the charges in this case and should not be

excluded by this Court under the government's motion.

3.   Government's Motion in Limine Regarding Cross-Examination of U.S. Secret Service

Witnesses (ECF 102) – Cross Examination of Secret Service Agents should not be

limited in this case.  The role of the Secret Service in protecting the Vice President on

January 6, 2021 is clearly part of the facts the government must prove for the charges

against Mr. Harkrider.  The government states that "to meet its burden of proof at trial

the government will call a witness from the United States Secret Service to testify that,

at the time of the Capitol breach, Secret Service agents were on duty to protect Vice

President Mike Pence and his two immediate family members, all of whom were

present at the Capitol.  These officers will further testify about the Capitol breach's

effect on the Secret Service's protection of Vice President Pence and his family

members."  *Id* at p. 2.  Mr. Harkrider should thus be able to cross examine the Secret

Service agents who testify about their roles in that process, the ability to carry out that

role successfully, and which parts of the Capitol were restricted as part of their

governmental function of protecting the Vice President that day.  The time frame

regarding the protecting of the Vice President is important for Mr. Harkrider to establish

as well, including times prior to and after the Vice President and his family were

successfully evacuated from the Capitol.   These areas of cross are not about extraneous matters or unduly prejudicial as they go to the heart of whether Mr. Harkrider's presence at the Capitol on January 6th impeded the Secret Service from fulfilling their functions and whether the building was indeed still restricted at the time of his alleged entry.

The government claims that the Secret Service protocols about relocation and safety are irrelevant to this case as they do not tend to make a fact of consequence more or less probable.  (ECF 102, p.5).   If that were the case, then how is it that the government has sought in other cases to present a mound of evidence through summary witnesses about the conduct of others at the Capitol that day that have nothing to do with the actual charges against the defendants? Additionally, the January 6th Select Committee Hearings have exposed much of the evidence surrounding Vice President Pence's evacuation to the public already, and that exposure may include members of our jury who will also have seen the footage and listened to the prejudicial communications by Secret Service officers in which they said goodbye to family members over the radio and on phone calls as rioters entered the building.

https://www.foxnews.com/politics/mike-pence-secret-service-agents-feared-lives-said-goodbyes-family-jan-6-committee

Indeed, the hearings have played CCV video of the evacuation of Vice President Pence, identified the location of his exit, and even exposed these communications between Secret Service officers during the time period of that evacuation.  In fairness, Mr. Harkrider should be able to explore with these agents on cross examination all of these things, especially if even one seated juror admits to having seen the January 6th Select committee hearings.

How and when the Capitol was restricted that day, to whom that restriction was communicated and who had the power to override that restriction are all relevant to the charges that Mr. Harkrider entered a building restricted by the Secret Service that day. How the evacuation order to remove the Vice President was communicated to the Secret Service, when it was communicated, by whom, how it was executed, when it was executed and when it was deemed that the Vice President was out of danger are also material to Mr. Harkrider's defense. This material information must be explored on cross-examination. Additionally, Mr. Harkrider should also be allowed to cross-examine the agents on President Trump's public invitation to the crowds that day to march down to the Capitol and what effect that had on the Secret Service's ability to protect the Vice President. This should include how this message was communicated to the Vice President's detail that day alerting them of the President's message to the crowds and if they sought to evacuate the Vice President Pence immediately upon hearing this information or whether and why there was a delay that occurred between hearing this and making the decision to evacuate the Vice President and his family members.

4.  Government's Motion in Limine to Preclude Arguments and Evidence about Alleged Law Enforcement Inaction  (ECF 103) – The Defendant may seek to introduce evidence that the lack of barricades and police restrictions at the Capitol grounds that day allowed a sea of protesters access to the grounds in an unrestricted manner with little to no direction on where it was safe to stand.  While this is not directly related to evidence that the government seeks to preclude about law enforcement giving permission to "enter the U.S. Capitol" that day, it is the type of evidence that goes to explain the actions of Mr. Harkrider in approaching the Capitol grounds and why he felt it was lawful to be on the grounds for a peaceful protest.

Evidence is well documented as to the lack of preparedness of the Capitol Police for the protest that day and the many security failures of the entities directly responsible for Capitol Security that day.  ( See "Examining the U.S. Capitol Attack: A Review of the Security, Planning, and Response Failures on January 6" Staff Report, Committee on Homeland Security and Governmental Affairs ad Committee on Rules and Administration,

https://www.rules.senate.gov/imo/media/doc/Jan%206%20HSGAC%20Rules%20Report.pdf?utm_source=newsletter&utm_medium=email&utm_campaign=newsletter_axiosam&stream=top.)    The Senate staff report issued on these failures found that the U.S. Capitol Police were not "adequately prepared to prevent or respond to the January 6 security threats, which contributed to the breach of the Capitol."  *Id* at p. 2.  The lack of communication between agencies about the potential threat level, lack of necessary supplies such as riot shields and barricades, inadequate training in the use of non-lethal force and flash bang grenades for crowd control, and the general lack of coordination and leadership that day are all relevant to, and contributed to, the violence and chaos that occurred at the Western Terrace Tunnel.   The actions taken by U.S. Capitol Police in an incompetent and inadequate manner are more important here than their "inactions."  Mr. Harkrider should be able to present evidence and arguments that demonstrate that the atmosphere of the crowd was peaceful and controlled until the Capitol Police began to incompetently use ineffective and hostile crowd control measures.  The Capitol Police had not been properly trained on these measures or their application to crowd control situations like January 6th so they instead began an assault on the crowd that created chaos and conflict that contributed to the riot.

Included in this evidence should be the evidence and video showing the alleged beating of Rosanne Boyland with a wooden stick by a U.S. Capitol Police officer, an

event Mr. Harkrider was near at the time and of which he witnessed the aftermath and fallout, including seeing Ms. Boyland's friend in the crowd completely distraught after seeing her die and get dragged into the Capitol by officers.

https://www.washingtonexaminer.com/news/video-shows-officer-striking-motionless-woman-on-ground-during-capitol-riot.

Additionally, Mr. Harkrider witnessed Capitol Police shooting flash bang grenades and rubber bullets into the crowd at the furthest exteriors thus creating the effect of pushing the crowds forward and packing them in tightly towards the choke point of the Western Terrace Tunnel.  *See* Figure 1 below taken from

https://www.thegatewaypundit.com/2021/12/already-know-capitol-police-killed-2-female-trump-supporters-jan-6-now-video-shows-third-dead-trump-supporter-killed-police-fired-crowd-video/. The effect was to create an atmosphere similar to a combat or a war zone.  Mr. Harkrider's reaction to this chaos, the grenade bangs and his PTSD diagnosis will all be a crucial elements in explaining his behavior that day.   The effect the Capitol Police had on his behavior is relevant and material evidence in this case and should not be precluded.

*Figure 1*



5. Government's Motion in Limine Regarding Evidence of Specific Locations of U.S. Capitol Police Surveillance Cameras (ECF 104) – Mr. Harkrider will not seek to

establish the exact locations of cameras in the U. S. Capitol Police surveillance system or seek to admit a map of the location of these cameras.  However, the location and placement of the Lower West Terrace tunnel camera will be an important piece of evidence in this case and should not be precluded.  The mounting of that camera, the potential distortion the camera brings to the size and depth of the space, and the placement of the camera in relation to the doors inside the tunnel will be relevant to Mr. Harkrider's defense and should be excluded from this motion in limine.  Undersigned counsel will work with the government on a stipulation.  The fact that defense counsel has not been permitted to view and take her own pictures of this tunnel, the doors at the end of the tunnel or the area outside the tunnel mean that this camera angle, at the moment, is the only view anyone has or will have of the area at trial.  Mr. Harkrider has argued previously that the camera causes distortion as to actual size of the area and that the distortion creates a prejudice of making the space look larger than it actually is. This fact should weigh in favor of him being able to present evidence that the camera angle and footage are from a camera mounted in a place that creates perception issues regarding that tunnel and how tightly packed people were inside as well as the distance between the camera and the doors, the entrance to the tunnel and the width of the tunnel.

Respectfully submitted,

KIRA ANNE WEST

By:      _____   /s/
Kira Anne West
DC Bar No. 993523
712  H Street N.E., Unit  509
Washington, D.C.  2000
kiraannewest@gmail.com
Attorney for Alex Harkrider

7

## Certificate of Electronic Service

I hereby certify that on July 29, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, with consequent service on all parties of record.

*/s/* Kira Anne West

**Counsel for Defendant Harkrider**