IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 1:21-cr-117 (TFH) |
| ALEX KIRK HARKRIDER  (02) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO
COMPEL ACCES TO NON-PUBLIC AREAS OF THE CAPITOL**

Defendant's motion to compel the government to allow him to inspect, measure, photograph, and videotape two non-public areas of the U.S. Capitol building should be denied. The Capitol is not in the possession, custody, or control of the prosecution team.  Moreover, due to the dismantling of the temporary inaugural stage, one of the areas defense counsel wishes to inspect—what has become known as the "tunnel,"—no longer exists in the same form that it did on January 6, 2021, which renders the requested inspection meaningless.  Additionally, in light of the thousands of hours of video footage produced in discovery (including CCV footage, body worn camera footage, public sourced video, and video from other defendant's cameras and phones), combined with the walkthroughs guided by the U.S. Capitol Police (USCP), the defendant fails to explain how the requested inspections are material to his defense.  Finally, in addition to being a disruption to the government employees who work in the Capitol, the defendant's requests to take detailed measurements, photographs, and video would create a risk to the continued security of the Capitol.  The defendant's motion to compel (Dkt. 96) must, therefore, be denied.

**BACKGROUND**

1. *Case Facts*

At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress convened in the United States Capitol building. The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential Election. With the Joint Session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over erected barricades. The crowd, having breached police officer lines, advanced to the exterior façade of the building. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol. At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers.

Believing that the 2020 presidential election had been fraudulently decided, Harkrider and his co-defendant, Ryan Nichols, traveled from Texas to Washington, D.C. for the "Stop the Steal" rally. On January 6, Harkrider, armed with a tomahawk axe and wearing camouflaged body armor, walked from the "Stop the Steal" rally to the U.S. Capitol building, where he eventually made his way to the to the inauguration stage which was in the process of being constructed on the Capitol's lower west terrace and where law enforcement battled to protect an entrance to the building referred to as "the tunnel." Harkrider led Nichols up the steps into the tunnel, where Harkrider joined the mob pushing against the line of officers protecting the doors at the end of the tunnel. Later, Harkrider and Nichols entered the Capitol Building through a broken window next to the tunnel into room ST2M, where they remained for several minutes before exiting. After exiting, Harkrider reentered the Capitol through the broken window and

can be seen shouting to the crowd of rioters, "cut their heads off" while drawing his hand across his neck in a slashing motion.



2. *Discovery Related to the U.S. Capitol Building*

The government has provided the defense with extensive discovery, in the form of organized crime scene walk throughs and thousands of hours of video footage from January 6, 2021, that enable the defendant to "inspect" the U.S. Capitol. In this case, and in all January 6th cases, the government has provided the defense with access to over 24,000 files consisting of USCP closed circuit video (CCV) footage, body-worn cameras (BWC) from multiple law enforcement agencies, U.S. Secret Service surveillance footage, videos found from public sources such as YouTube, citizen sleuth organizations, and news media, and videos recovered

**Government's Opposition to Defendant's Motion to**
**Compel Access to Non-Public Areas of the Capitol—Page 3**

from searches of cameras, computers, and phones of other January 6 defendants. For context, the video files, which were provided to the defense via evidence.com, amount to over nine terabytes of information and would take 102 days to view. The government has, therefore, assisted defense counsel in this case find relevant video footage from these sources, and continues to do as additional videos depicting the defendant are collected and/or identified. The government has also produced detailed maps and floorplans of the Capitol building.

Finally, U.S. Capitol Police provided multiple "crime scene walkthroughs" for defense counsel involved in January 6th riot cases. Defense counsel were notified of the scheduled walkthrough dates ahead of time. The tours were approximately two hours long and went to a predetermined list of public and non-public areas within the Capitol. Defense counsel were permitted to bring one defense investigator so that the investigator can provide trial testimony about the tour and what was seen.

As detailed in the Declaration of Sean Gallagher, U.S. Capitol Police Acting Assistant Chief for Uniformed Services (Exhibit 1), the walkthroughs were designed to ensure defendants are able to prepare for their defense while also protecting the continued security of the U.S. Capitol. Accordingly, there were certain conditions in place for those participating in the walkthroughs. For example, defense counsel were permitted to take photographs in public areas of the Capitol but were not permitted to do so in non-public areas of the Capitol. Counsel for the defendant indicate that they have gone on two of the Capitol walkthroughs. (Dkt. 96 ¶¶ 2, 10.)

3. *The Defense Requests*

Harkrider requests that the Court compel the government to both provide him with access to two specific areas of the Capitol and to permit the photographing, videotaping, and measuring of those specified areas: (1) room ST2M; and (2) the "tunnel."

## ARGUMENT

I.    **Legal Standard**

The Federal Rules of Criminal Procedure provide that, upon a defendant's request, the government must permit the defendant to "inspect and to copy or photograph" documents or objects, including buildings or places, that are within the government's possession, custody or control. Fed. R. Crim. P. 16(a)(1)(E). Rule 16 establishes "the minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases." *United States v. Karake*, 281 F. Supp. 2d 302, 306 (D.D.C. 2003) (quoting Fed. R. Crim. P 16 advisory committee's note to the 1974 amendments). Rule 16 does not, however, bestow on the defendant a right to unrestricted access to all documents and objects within the government's possession, custody, or control. *See United States v. Maranzino*, 860 F.2d 981, 985–86 (10th Cir. 1988) ("Rule 16 does not authorize a blanket request to see the prosecution's file"). Rather, it applies to those documents and objects that (1) are "material to preparing the defense;" (2) the government intends to use in its case-in-chief at trial; or (3) were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(1)(E). Rule 16 also provides mechanisms for a judge to regulate discovery. "At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1).

Demonstrating materiality under Rule 16 "is not a heavy burden." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993). Evidence is material under Rule 16 "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Marshall,* 132 F.3d 63, 68 (D.C. Cir. 1998) (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)). Material evidence includes both exculpatory and inculpatory

evidence. *Id*. Nevertheless, to show materiality, the defense must demonstrate that the evidence bears "some abstract logical relationship to the issues in the case" and would enable "the defendant significantly to alter the quantum of proof in his favor." *Lloyd* at 351 (internal quotation omitted); *see also United States v. Slough*, 22 F. Supp. 3d at 4-5 (observing that the movant bears the burden of demonstrating that the requested discovery bears "more than some abstract logical relationship to the issues in the case").

II. **The Prosecution Team Does Not Have Possession, Custody, or Control Over the Areas the Defendant Wishes to Inspect**

The Capitol is under the control of the Legislative Branch. The crime scene walkthroughs for the defense—and the walkthroughs for Assistant United States Attorneys—require permissions from numerous officials in the Legislative Branch. Although USCP is part of the prosecution team in January 6 cases and leads these tours, the Capitol itself is not in the Executive Branch's control. As a result, the Assistant United States Attorneys prosecuting January 6th cases and the federal agents investigating the cases need to ask for official tours of the building and are subject to restrictions in the building.

"[T]he court cannot order the government to allow defense counsel to inspect that which the government does not possess or control." *See United States v. Hawk*, No. CR 12-50044-JLV, 2013 WL 773908, at *2 (D.S.D. Feb. 28, 2013) (denying motion to compel inspection of crime scene located in victim's private residence, finding it is not in possession, custody, or control of the government, despite victim's cooperation with the prosecution) (*objections overruled sub nom. United States v. Yellow Hawk*, No. CR 12-50044-JLV, 2013 WL 1563230 (D.S.D. Apr. 12, 2013). Because the Capitol is not in the possession, custody, or control of the prosecution team, the defendant's motion to compel should be denied.

**Government's Opposition to Defendant's Motion to
Compel Access to Non-Public Areas of the Capitol—Page 6**

## III. The Requested Photographs, Recordings, and Measurements Are Not Material.

The photographs, recordings, and measurements that the defendant seeks are not materials that the government will use in its case-in-chief and are not materials that were obtained from or belong to the defendant. As a result, the defendant must show that these items are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). The defendant fails to do so. The CCV and BWC showing where the defendant was on January 6th remain the most accurate evidence; any additional videos taken after January 6th would not add to the "quantum of proof" in the defendant's favor. *See United States v. Sutton*, No. CR 21-0598 (PLF), 2022 WL 1202741, at *11 (D.D.C. Apr. 22, 2022) (denying defendant's request for recordings from "any and all cameras" maintained by law enforcement to monitor the area a crew operated in when the government already collected and disclosed all video footage of the incident for which the defendant was charged).

### A. Interior Details of Room ST2M Are Not Material

Defense counsel has not explained how videotaping, photographing, and measuring the interior space of room ST2M is material to the defense. Counsel does not explain how the requested measurements and documentation would negate or tend to negate any element of any of the charged offenses. For example, the defense does not explain how any measurements, photographs, or video that they would take would negate or tend to negate Harkrider's physical presence inside room ST2M, when video and photographic evidence indisputably shows him standing inside the room, armed with a tomahawk, leaning outside the window, and making a throat slashing gesture, which is sufficient for conviction on Counts Six, Eight, Nine, and Eleven of the Superseding Indictment.

Defense counsel suggests that additional information about the interior of Room ST2M is necessary for his obstruction defense because he did not enter the Senate or House Chambers and

he wants "to show that [room ST2M] provided alternative pathways to interior spaces in the Capitol and that he made no attempt to gain access further into the building." (Dkt. 96 ¶¶ 9, 14.) Putting aside the relevancy or legal sufficiency of an obstruction defense based on non-entry to the Senate or House Chambers, the government is willing to stipulate that room ST2M "provided alternative pathways to interior spaces in the Capitol." But no amount of photographing, videotaping, or measuring *today* has any bearing on whether Harkrider made any attempt to gain further access into the building through those pathways on January 6, 2021.[1]

Defense counsel also suggests that measurements and video would help demonstrate that Harkrider could see events surrounding the death of a fellow rioter but not the violence occurring inside the tunnel. (Dkt. 96 ¶ 15.) But defense counsel does not explain how what Harkrider was able to see or not see *after* making unlawful entry into the Capitol can have any bearing on his mental state to make the unlawful entry in the first place.

### 1.      Room ST2M and Theft of Government Property

The Superseding Indictment alleges that Harkrider stole a broken table leg from room ST2M. In his post-arrest interview with law enforcement, Harkrider initially denied taking anything from the Capitol, but later admitted that he took a broken table leg from ST2M, which was found in the search of his house:

---

[1] The Superseding Indictment does not allege that Harkrider took any of those pathways further into the Capitol. Additionally, case specific discovery produced to date does not show Harkrider going beyond room ST2M.

**Government's Opposition to Defendant's Motion to
Compel Access to Non-Public Areas of the Capitol—Page 8**



However, the government recently produced in case-specific discovery video footage from inside room ST2M that reveals that the stolen piece of wood is likely not a broken table leg, but rather an arm rest support from a chair, similar to the chair depicted below:[2]



---

[2] The government is exploring whether it will address this discrepancy in a superseding indictment or a bill of particulars.

**Government's Opposition to Defendant's Motion to**
**Compel Access to Non-Public Areas of the Capitol—Page 9**

Further, in a recent in-person meeting, the government allowed defense counsel to physically handle, inspect, photograph, and measure the seized piece of wood.

Additionally, all of the broken furniture from room ST2M has been repair and/or removed. Therefore, the best evidence regarding the furniture in the room is the video and photographic evidence from January 6, not any contemporary inspection by the defense.

### B. Additional Details Regarding the Tunnel Are Not Material

The defendant argues that he needs to take his own pictures, videos, and measurements of the tunnel because the CCV makes the tunnel seem wider than it is in person. (Dkt. 96 ¶ 16.) He does not explain how his how his own recordings or photographs would be any more accurate than the CCV and BWC footage provided in discovery. This is especially true in light of the fact that the inauguration stage has been dismantled and the area in and around the tunnel looks vastly different today than it did on January 6, 2021. Indeed, on January 6, 2021, the floor "tunnel" that Harkrider stood on was actually a temporary raised platform covering a stairway. Additionally, the arched entrance at the end of the tunnel was lined with temporary carpentry, making it actually narrower than it is today.

If a defense investigator truly believes that the CCV makes the tunnel area seem narrower than it appeared in person on the USCP tour, they can testify to that at trial. The investigator can speak firsthand about the size of the space, for example, hypothetically explaining that the width or length of the tunnel was approximately the same distance from the witness box to where a given juror sits. The investigator can also testify about his or her ability to move in the space, and what he or she could observe from the space. The crime scene walkthroughs—without the requested measurements or photographs and recordings of non-public areas—thus provide a sufficient opportunity for the defense to uncover admissible evidence, aid in witness preparation, corroborate testimony, or assist with impeachment or rebuttal. *Marshall*, 132 F.3d at 68.

And to the extent the defendant wants to argue that he was pushed into the tunnel by other rioters, the best evidence to support that argument is the actual video footage from that day, not any measurements or photographs defense counsel could take of an empty stairway today in the absence of law enforcement, the defendant, and his fellow rioters.

IV. **Ensuring the Security of the Capitol Is Good Cause to Deny the Defendant's Request.**

Protecting the Capitol building and those within the building is good cause for the Court to deny the defendant's request. Courts in this Circuit have consistently held that the protection of the Capitol Building and prominent government officials constitutes a significant government interest. *See, e.g.*, *United States v. Mahoney*, 247 F.3d 279, 286 (D.C. Cir. 2001) (stating that the government has a significant interest in "'ensuring public safety and order'"); *Mahoney v. U.S. Marshals Serv.*, 454 F. Supp. 2d 21, 33 (D.D.C. 2006) (noting that "armed gunmen have stormed the Capitol building more than once") (citing *United States v. Grace*, 461 U.S. 171, 182 (1983))). The photographs, recordings, and measurements the defendant seeks also fall within the definition of "security information." Pursuant to 2 U.S.C. §1979, any "security information" related to the Capitol Police can only be released to third parties with the approval of the Capitol Police Board. Security information is defined as "information that-(1) is sensitive with respect to the policing, protection, physical security, intelligence, counterterrorism actions, or emergency preparedness and response relating to Congress, any statutory protectee of the Capitol Police, and the Capitol buildings and grounds."

The defendant's requests would create a risk to the continued security of the Capitol. Information related to the measurements and photographs of the non-public areas of the Capitol would clearly be considered security information and subject to the approval requirements required by 2 U.S.C. § 1979. Additionally, as discussed in Exhibit 1, permitting the

measurements that the defendant seeks, such measuring distances from wall to wall, from wall to door and vice versa, would provide a wealth of information to an adversary who might wish to calculate blast distances,[3] the ability to fly a drone within the building,[4] or how large of a group could quickly pass through the hallways,[5] to name but a few security risks. Allowing measurements and photographs and recordings of non-public areas of the Capitol will also expose security features that are embedded in the physical structure of the Capitol—including features that had to be changed after the January 6th riot.

Finally, providing the defense with the opportunity to take measurements and photographs and recordings in non-public areas of the Capitol would be a heavy burden on USCP and consume USCP resources that should instead be devoted to the protection, security, and safety of the U.S. Capitol and those within the Capitol. The Capitol is not open to the general public[6] and is a 24 hours a day, 7 days a week work place for members of Congress and their staff. The Capitol is therefore protected 24 hours a day, 7 days a week, both inside and outside, by the USCP. The time spent by USCP officers in arranging for the defendant's taking of measurements and photographs is time that would otherwise be devoted to protecting the Capitol and those inside of it. Furthermore, if the Court were to order that the defendant must be

---

[3] The U.S. Capitol was bombed on November 7, 1983.6 7.8 In order to enter the Capitol, one must either be a Member of Congress, Congressional staff, or be escorted by one.

[4] A Massachusetts man was arrested in September of 2011 for planning to fly a drone into the U.S. Capitol and the Pentagon.

[5] Defendants in current January 6 cases have been accused of using a "stack formation" to move up the steps of the Capitol

[6] In order to enter the Capitol, one must either be a Member of Congress, Congressional staff, or be escorted by one. Any visitors on official business must proceed to the Appointments Desk where their visit will be verified. With the exception of Members, their spouses or official law enforcement, all visitors to the U.S. Capitol, including staff, must go through security screening that includes a search for weapons. The U.S. Capitol is not open to the general public without an appointment and tours of the U.S. Capitol are on a pre-determined route by credentialed tour guides.

**Government's Opposition to Defendant's Motion to**
**Compel Access to Non-Public Areas of the Capitol—Page 12**

permitted to take the requested measurements and photographs and recordings of non-public areas of the Capitol, it is highly likely that many other January 6th defendants would seek similar orders, and USCP would have to spend valuable hours and manpower to provide for each individual defendant's requested measurements, photographs, and recordings. In light of these significant security concerns and risks regarding the Capitol, there is good cause to deny the

## CONCLUSION

For the foregoing reasons, the defendant's motion to compel should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

 /s/ Douglas B. Brasher
DOUGLAS B. BRASHER
Assistant United States Attorney
Texas State Bar No. 24077601
Federal Major Crimes – Detailee
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone:  214-659-8604
douglas.brasher@usdoj.gov

SARAH W. ROCHA
Trial Attorney
D.C. Bar No. 977497
219 S. Dearborn Street, Fifth Floor
Chicago, Illinois 60604
Telephone:  202-330-1735
sarah.wilsonrocha@usdoj.gov
