## DECLARATION OF SEAN P. GALLAGHER

I, Sean P. Gallagher, have personal knowledge of the following facts and will testify to them, if called to do so:

1. I have been a sworn law enforcement officer with the United States Capitol Police ("USCP" or "Department") since September of 2001. Since January of 2021, I have been the Acting Assistant Chief for Uniformed Services. In that role, I am in charge of the Uniformed Services Bureau, the Operational Services Bureau, and the Command and Coordination Bureau. These three bureaus comprise the vast majority of the sworn officers on the Department.

2. The Capitol Division is one of the divisions within the Uniformed Services Bureau, and therefore, the protection of the U.S. Capitol is under my command. The U.S. Capitol is one of the most secure locations in the country. It is protected 24-7 both inside and outside by the USCP. In order to enter the U.S. Capitol, one must either be a Member of Congress ("Member"), Congressional staff ("Staff"), or be escorted by one. Any visitors on official business must proceed to the Appointments Desk where their visit will be verified. With the exception of Members, their spouses or official law enforcement, all visitors to the U.S. Capitol, including staff, must go through security screening that includes a search for weapons. The U.S. Capitol is not open to the general public without an appointment and tours of the U.S. Capitol are on a pre-determined route by credentialed tour guides. There are many non-public areas of the U.S. Capitol, and it is a 24-7 work place for Members and Staff.

3. In addition to the access control to the U.S. Capitol, there are many security features embedded in the infrastructure. There is an extensive system of cameras, both inside and

outside the U.S. Capitol, that are monitored 24-7 by the USCP. The footage from these cameras (over 7,000 hours) has been provided to each defendant in a January 6th case. The interior footage from the U.S. Capitol was originally deemed "highly sensitive" under the protection orders drafted by the United States Attorney's Office. It is my understanding that in the Fall of 2021, the designation of this footage was lowered to the "sensitive" level, over the objections of the USCP. However, the USCP continues to consider any interior footage of the U.S. Capitol to be highly sensitive information, and that access to it should be strictly limited. As noted below, defense counsel were permitted to take photographs in all public areas, but not in any non-public areas during the tours given to them.

4. There are additional security features in the doors, windows, and within the U.S. Capitol that are extremely sensitive and cannot be discussed in this document.

5. It is my understanding that one of the January 6th defendants, Mr. Daniel Egtvedt, has requested special permission to measure and photograph certain non-public spaces within the U.S. Capitol. This defendant has made this request even though I understand his attorneys have been given access to camera footage of the entire Capitol complex to include non-public areas and have personally participated in two tours of the U.S. Capitol.

6. Since January 6, 2021, the USCP has organized nearly ten tours for defense counsel. The tours cover virtually every area of the U.S. Capitol that was breached on January 6th. Hundreds of defense counsel (and Assistant United States Attorneys and Federal Bureau of Investigation agents on additional tours) have gone on these tours, some more than once. Photographs in all public areas of the U.S. Capitol were freely permitted. In addition, defense counsels were permitted to each bring in one defense investigator as needed in the event trial testimony about the tour and what was seen should be needed for trial.

7. If we were to now permit one defense counsel to come to the U.S. Capitol to film and measure non-public areas of the building, we would be required to do so for any other defendant, leading to a significant duplication of previous efforts. With over 800 defendants currently charged, the sheer volume and resource expenditure would be a virtually impossible task that would significantly tie up valuable USCP resources for "one off" visits that are otherwise required for the protection, security, and safety of the U.S. Capitol.

8. As noted above, there are many secret and highly-sensitive security features embedded in the physical structure of the U.S. Capitol. Some existed on January 6th and some are new, having needed to be changed after January 6 because the USCP must continue to protect the U.S. Capitol (and those who work there, including Members of Congress) and address future operational security vulnerabilities. Allowing a defendant to take the requested measurements would compromise the security of the U.S. Capitol by exposing security features and vulnerabilities.

9. My understanding is that the defendant in this matter has access to camera footage depicting his actions on January 6th. Permitting him to measure distances from wall to wall, from wall to door and vice versa, would provide a wealth of information to an adversary who might wish to calculate blast distances[1], the ability to fly a drone within the building[2] or how large of a group could quickly pass through the hallways,[3] to name but a few security risks. Again, it is not simply that this defendant is making his one, specific request for non-public information, a request that is unnecessary given his counsel's prior physical access to the

---

[1] The U.S. Capitol was bombed on November 7, 1983.
[2] A Massachusetts man was arrested in September of 2011 for planning to fly a drone into the U.S. Capitol and the Pentagon.
[3] Defendants in current January 6 cases have been accused of using a "stack formation" to move up the steps of the U.S. Capitol.

3

building and receipt of relevant evidentiary material, it is that the USCP would now have to let provide each defendant with similar access to various non-public information that is critical to the security of the U.S. Capitol.

10. There is a statute, 2 U.S.C. §1979, that protects certain information related to Congress, the Capitol Grounds, and the USCP. The statute states that any "security information" related to the Capitol Police can only be released to third parties with the approval of the Capitol Police Board ("Board"). Security information is defined as "information that-(1) is sensitive with respect to the policing, protection, physical security, intelligence, counterterrorism actions, or emergency preparedness and response relating to Congress, any statutory protectee of the Capitol Police, and the Capitol buildings and grounds." The USCP considers information related to the measurements of the non-public areas of the U.S. Capitol to be "security information," and therefore, Board approval is required. The type of request made here directly implicates virtually all of the areas covered by 2 U.S.C. §1979.

*   *   *   *   *

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this   5th   day of July 2022.

_____
Sean P. Gallagher