IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 1:21-cr-117 (TFH) |
| ALEX KIRK HARKRIDER  (02) | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE

The defendant's audio-recorded post-arrest statement should not be suppressed. The defendant was advised of his constitutional rights, signed an FBI Advice of Rights form, and stated he "didn't have anything to hide" and was "willing to cooperate" before answering the agent's questions during a 15-minute interview. The defendant was advised at the outset, both orally and in writing, that: (1) he had the right to remain silent; (2) he had the right to talk to lawyer before being asked any questions, (3) he had the right to have a lawyer with him during the questions, (4) that if he could not afford a lawyer, one would be appointed to him before any questioning, if he wanted, and (5) that if he decided to answer questions without a lawyer present, he could stop answering questions at any time.

At no point during the questioning did the defendant ever invoke his right to remain silent, talk to a lawyer, have a lawyer present, or have a lawyer appointed to him. The tone of the interview was conversational and non-threatening. The defendant never expressed any confusion and showed no signs of distress.

Despite the foregoing, the defendant seeks to suppress his statement based on a single comment he made after going over an Advice of Rights form: "I don't know if I should have a

lawyer present or not, I don't really know." In response, to this statement, the interviewing agent calmly and correctly explained, that it was it was "completely up to y… your choice."

Because the defendant never unambiguously invoked his right to remain silent or to have a lawyer present, the motion to suppress should be denied.

## FACTUAL BACKGROUND

At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress convened in the United States Capitol building. The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential Election. With the Joint Session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over erected barricades. The crowd, having breached police officer lines, advanced to the exterior façade of the building. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol. At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to – and did – evacuate the chambers.

Believing that the 2020 presidential election had been fraudulently decided, Harkrider and his co-defendant, Ryan Nichols, traveled from Texas to Washington, D.C. for the "Stop the Steal" rally. On January 6, Harkrider, armed with a tomahawk axe and wearing camouflaged body armor, walked from the "Stop the Steal" rally to the U.S. Capitol building, where he eventually made his way to the to the inauguration stage which was in the process of being constructed on the Capitol's lower west terrace and where law enforcement battled to protect an entrance to the building referred to as "the tunnel." Harkrider led Nichols up the steps into the

tunnel, where Harkrider joined the mob pushing against the line of officers protecting the doors at the end of the tunnel. Later, Harkrider and Nichols entered the Capitol Building through a broken window next to the tunnel into room ST2M, where they remained for several minutes before exiting. After exiting, Harkrider reentered the Capitol through the broken window and can be seen shouting to the crowd of rioters, "cut their heads off" while drawing his hand across his neck in a slashing motion.



On January 18, 2021, the defendant was arrested in Carthage, Texas, placed in handcuffs, and transported to a local jail, where law enforcement conducted an audio-recorded interview. The interviewing officers informed the defendant of his constitutional rights, and the defendant signed an FBI Advice of Rights form, attached hereto as Exhibit 1. While reviewing the form,

**Government's Opposition to Defendant's**
**Motion to Suppress Statements and Evidence—Page 3**

the defendant stated, "I don't know if I should have a lawyer present or not, I don't really know." In response, to this statement, the interviewing agent explained, that it was it was "completely up to y… your choice."  After this, the defendant stated that he "didn't have anything to hide" and was "willing to cooperate."  The defendant then answered the agent's questions for the next approximately 15 minutes, before the interview was concluded by the agents, not the defendant.

At no point during the questioning did the defendant ever invoke his right to remain silent, talk to a lawyer, have a lawyer present, or have a lawyer appointed to him.  The tone of the interview was conversational and non-threatening.  The defendant never expressed any confusion and showed no signs of distress.

## LEGAL STANDARD

The Fifth Amendment provides that "[n]o person … shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. To safeguard that right, the police must warn a suspect who is going to be questioned while in custody that he "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). While Fourth Amendment waivers need only be voluntary, *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), a *Miranda* waiver must be both intelligent and voluntary. *Miranda v. Arizona*, 384 U.S. 439, 471-72 (1966).

These rights need not be word for word from the *Miranda* ruling. Substance, not form, is the test. *See, e.g.*, *Florida v. Powell*, 559 U.S. 50, 64, (2010) ("We decline to declare its precise formulation necessary to meet *Miranda's* requirements. Different words were used in the advice [the defendant] received, but they communicated the same essential message."); *Duckworth v.*

*Eagan*, 492 U.S. 195, 202 (1989) ("We have never insisted that *Miranda* warnings be given in the exact form described in that decision."); *California v. Prysock*, 453 U.S. 355, 359, (1981) ("*Miranda* itself indicated that no talismanic incantation was required to satisfy its strictures.").

A suspect who wishes to invoke his rights must do so unambiguously. *See Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) ("There is good reason to require an accused who wants to invoke his or her right to remain silent to do so unambiguously."); *Davis v. United States*, 512 U.S. 452, 461-62 (1994) ("If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him."). This requirement "results in an objective inquiry that avoids difficulties of proof and provides guidance to officers on how to proceed in the face of ambiguity." *Berghuis*, 560 U.S. at 381. Where a suspect says something ambiguous or equivocal, it is not only permissible but often "good police practice" to clarify whether he wants to invoke his rights. *Davis*, 512 U.S. at 461; *accord Berghuis*, 560 U.S. at 381. Where the suspect decides to talk, his statements may be admitted without violating the Fifth Amendment if the government shows by a preponderance of evidence that he knowingly, intelligently, and voluntarily waived his rights. *See Colorado v. Connelly*, 479 U.S. 157, 168-69 (1986).

The Supreme Court has indicated that the inquiry into whether a statement is obtained voluntarily should be determined with reference to the totality of the circumstances. In determining whether a defendant's will was overborne in a particular case, the Court has "assessed the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, (1973). The ultimate question is whether the suspect's "will [has been] overborne" by "coercive police activity." *Colorado v. Connelly*, 479 U.S. 157, 167, 178 n.2 (1986). If there is no

coercive police activity, a statement is considered voluntary. *Connelly*, 479 U.S. at 167; *Baird v. United States*, 851 F.2d 376, 382 (D.C. Cir. 1988). *Compare United States v. Hallford*, 816 F.3d 850, 856 (D.C. Cir. 2016) (no coercive police conduct where defendant agreed to an interview with agents, agents asked "straightforward" questions in "conversational tones"; defendant was not restrained; interview lasted less than an hour; defendant questioned in a hospital and not in a police-dominated atmosphere; defendant was not tricked into answering questions; defendant's refusal to consent to a search of his vehicle showed his will was not overborne), *with Little v. United States*, 125 A.3d 1119, 1133 (D.C. 2015) (defendant chained to the ground and chair, denied counsel when requested, threatened that he would be raped if he went to jail, and accused of crimes officers knew he did not commit, was coerced into confessing).

1) **The Defendant's Statement, "I don't know if I should have a lawyer" Is Not an Unequivocal Invocation of His Right to Counsel**

Courts have routinely found that statements like the one at issue here ("I don't know if I should have a lawyer present or not, I don't really know."), are not sufficient to invoke one's right to counsel. For example, in *United States v. Buckley*, 4 F.3d 552, 558 (7th Cir. 1993), the Seventh Circuit found that the statement, "I don't know if I need an attorney" could not be reasonably construed as actually a request to consult with a lawyer. In *United States v. Thousand*, 558 F. App'x 666, 671–72 (7th Cir. 2014), the Seventh Circuit made the same finding regarding the statement, "I think I need a lawyer, I don't know, but I want to cooperate and talk." The Court explained, "by immediately qualifying 'I think I need a lawyer' with 'I don't know,' [the defendant] failed to express a 'clear implication of a present desire to consult with counsel.'" Similarly, the Second Circuit found the following language to be too ambiguous to be considered a request for counsel: "I am not sure if I should be talking to you […] I don't know if I need a lawyer." *United States v. Plugh*, 648 F.3d 118, 124–25 (2d Cir. 2011). And in *Gray v. Pliler*,

243 F.3d 547 (9th Cir. 2000), the Ninth Circuit held that the statement, "I don't know, I think maybe I should talk to a lawyer," was not an unambiguous request for counsel requiring the officers to cease all questioning.

As the Supreme Court instructed in *Davis*, an ambiguous or equivocal statement about a lawyer is not enough to trigger one's rights under the Constitution, requiring law enforcement to stop a custodial interview. Harkrider was explained his rights orally and in writing. He expressed his understanding of those rights orally and in writing. He never made an unequivocal request to have a lawyer present. His motion to suppress, should therefore be denied.

**2) The Government Properly Seized a Piece of Broken Capitol Furniture**

The defendant offers nothing in support of his argument to suppress the stolen broken piece of Capitol furniture found in his home, other than the conclusory statement that the warrant lacked probable cause to find that piece of evidence in his home. Mot. at 7. Harkrider is wrong. The warrant application detailed evidence showing the defendant unlawfully entered the Capitol Building, and the warrant authorized authorities to seize documents and "other items that show contextual information necessary to understand the fruits, contraband, evidence, and instrumentalities of violations [of, among other things, 18 U.S.C. § 1752(a), Unlawful Entry – Restricted Building or Grounds]." The physical piece of seized furniture is just that—an item that shows contextual information and evidence about the defendant's unlawful entry into the Capitol. That it also constitutes evidence of another violation not mentioned in the warrant or warrant application (i.e., 18 U.S.C. § 641, Theft of Government Property), is of no moment.[1]

---

[1] The defendant also asks the Court to suppress firearms found at his home. Mot. at 10 (concluding sentence). However, he gives no legal or factual basis for this request. Accordingly, this Court should deny it. If the defendant provides any legal or factual justification in a reply brief, the government will respectfully ask for permission to submit a sur-reply.

### 3) The Government's Search of the Defendant's Facebook Page Was Proper

The defendant asks the Court to suppress the results of a search warrant executed on his Facebook account, claiming that the warrant lacked probable cause. Mot at 9. The defendant is wrong.

The warrant application set forth probable cause with publicly available information, including among other things, Facebook posts by Harkrider's co-defendant, Ryan Nichols. In those posts, Nichols "tagged" Harkrider's Facebook account, which indicated to the affiant that Harkrider not only had Facebook account, but that it would contain evidence of his unlawful activities at the Capitol on January 6, 2021. Even though these tagged posts may not have been publicly available on Harkrider's Facebook profile, the affiant explained that he knew that "When a user is 'tagged' in a photo or video, he or she receives a notification of the 'tag' and a link to see the photo or video." In other words, both the "tagging" and the "tagged" accounts would contain information related to the photo and video, regardless of whether the owner of the "tagged" account made the post public. The affiant also explained that the defendant's Facebook account was likely to contain information about the defendant's geographic location at various times.

### CONCLUSION

For the foregoing reasons, the defendant's motion to suppress should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

 */s/ Douglas B. Brasher*
DOUGLAS B. BRASHER
Assistant United States Attorney
Texas State Bar No. 24077601
Federal Major Crimes – Detailee
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone:  214-659-8604
douglas.brasher@usdoj.gov

SARAH W. ROCHA
Trial Attorney
D.C. Bar No. 977497
219 S. Dearborn Street, Fifth Floor
Chicago, Illinois 60604
Telephone:  202-330-1735
sarah.wilsonrocha@usdoj.gov