# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**DANIEL D. EGTVEDT**,<br><br>Defendant. | Case No. 21-cr-177 (CRC) |

## ORDER

Daniel D. Egtvedt has been charged in a nine-count indictment for his participation in the events at the U.S. Capitol on January 6, 2021. See Superseding Indictment, ECF No. 43. In advance of a bench trial set for December 5, 2022, the defense has moved to compel additional discovery. Specifically, Mr. Egtvedt requests an order that the government "allow his defense counsel and investigator access to several non-public areas of the Capitol building in order to inspect, photograph and videotape" them. Def.'s Mot. to Compel Access at 1 ("Mot. Compel"), ECF No. 84. The government opposes this request, which it says is unnecessary and would create a security risk. At this point, the Court agrees with the government that the requested discovery is not necessary to the presentation of Mr. Egtvedt's defense. He also has failed to address the government's security concerns. For those reasons, the Court will deny the motion, without prejudice to renewal if it becomes clear at trial that the information Egtvedt seeks is relevant to any material dispute of fact.

First, a bit of background on Mr. Egtvedt's journey through the Capitol and the areas to which he now requests additional access. As relevant here, the government alleges that Egtvedt arrived at an entrance to the Capitol building—the Senate Wing doors—around 2:37 p.m., about 25 minutes after the building was first breached. See Opp'n to Mot. Dismiss Count 4 at 6, ECF No. 71. At that point, Egtvedt can be seen on U.S. Capitol Police ("USCP") closed circuit video

("CCV") standing at the doorway, talking to law enforcement through a broken window. Id. About a minute later, an officer inside the building reached over a makeshift barricade and sprayed Egtvedt through the window with OC spray, a chemical irritant. See Opp'n to Mot. Compel at 2–3, ECF No. 87. The government alleges Egtvedt entered the Capitol about ten minutes later. Id. at 3.

Based on security footage and social media recordings made from inside the Capitol that day, Egtvedt then made his way south through the building, toward the Crypt and through to the Hall of Columns. Id. at 3–4. Around 3:13 p.m., Egtvedt appears on video in the Hall of Columns, where he encountered officers who told him to leave and motioned toward the exit. Id. at 4. The government alleges that Egtvedt ignored that order and physically resisted their efforts to force him out. Id. For his part, Egtvedt claims the OC spray earlier that afternoon had impaired his eyesight, such that he could not see or comprehend the officers' instructions. See Reply at 7, ECF No. 88. In the scuffle, Egtvedt fell (or perhaps was pushed) and hit his head against one of the large columns in the hallway. See Opp'n to Mot. Compel at 6. In the government's telling, Egtvedt declined medical assistance, and two officers "half-carried, half pushed him toward and out the doorway." Id. The government alleges that Egtvedt attempted to reenter the Capitol, but was stopped by several officers. Id. at 6–7.

In his motion to compel, Egtvedt seeks permission to photograph, videotape, and measure various distances in the parts of the Capitol he entered on January 6th. Notably, Egtvedt's counsel and her investigator have already twice visited these areas during tours USCP arranged for defense counsel. See Gallagher Decl. ¶¶ 2, 5. Due to security concerns, they were precluded from taking photographs in areas designated "non-public"—including the Senate Wing doors— but allowed to do so in public areas. See Exs. 1 & 2 to Mot. Compel. Defense counsel says she

was told not to photograph the Hall of Columns, even though it was designated as public. Mot. Compel at 1–2. Counsel also wished to measure the distances between various parts of the building—including the size of the Senate Wing Doors and the distance between columns in the Hall of Columns—but was forbidden from doing so. Id. at 2. Because of these limitations, she asked for further access in a May 3, 2022, letter to the government. Id. at 2. The government rejected the request, following a determination by the Capitol Police's General Counsel's Office that it would violate established safety protocols. Id. Defense counsel then filed the instant motion.

The Court's decision is guided by Federal Rule of Criminal Procedure 16, which provides that, under certain circumstances and upon request, "the government must permit the defendant to inspect and to copy or photograph . . . buildings or places" that are "within the government's possession, custody or control." Fed. R. Crim. P. 16(a)(1)(E). But the government must only do so where "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Id. The defendant bears the burden of showing materiality under this rule, although the burden "is not . . . heavy." United States v. Lloyd, 992 F.2d 348, 351 (D.C. Cir. 1993). Evidence is material if it "would enable the defendant significantly to alter the quantum of proof in his favor"—for example, if "it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." Id. (internal citations omitted). Rule 16 also gives the Court certain power to regulate discovery, including to "deny, restrict, or defer discovery or inspection" "for good cause." Fed. R. Crim P. 16(d)(1).

The government asks the Court to deny Egtvedt's motion to compel under Rule 16 because the additional information he seeks is not material to preparing his defense, and because

3

the security concerns offer good cause to restrict access. At least based on the record as it currently stands, the Court agrees.

Most significantly, Egtvedt has not met his burden to establish that any of this evidence is material to his defense. In his motion, Egtvedt claims that—despite the voluminous photographs and video footage of his time in the Capitol already in his possession—he needs to photograph and measure the distances between various places in the Capitol himself. The existing CCV and body-worn camera videos, he says, "distort distances between objects in an unreliable way." Mot. Compel at 2. This distortion supposedly makes it difficult to assess, among other things, how far he was from various law enforcement officers when he was attacked with OC spray, and whether he was close enough to see the gestures of other officers while traversing the Hall of Columns. See Reply at 2–8.

There are several problems with this theory. First, it is not clear how the exact distance between Egtvedt and law enforcement officers during these events is material to any relevant dispute of fact. Distance could matter most obviously for the OC spray incident. Egtvedt claims he was sprayed at a very close distance—6 to 12 inches—causing him pain and visual impairment for the remainder of his time at the Capitol. After reviewing the video footage of the encounter, the Court agrees that he was likely sprayed from close range. But it is not obvious how narrowing down the exact distance would help the decisionmaker—which in this bench trial is the Court—evaluate the effects of the spraying more fully. The information holds particularly little value because so many other variables are missing—such as how much spray was used or where Mr. Egtvedt stood in relation to the officer's outstretched arm. The Court likewise does not see how knowing the exact distance between Egtvedt and any individual officer in the Hall of Columns—a relatively small space—would clarify whether he could see their gestures.

4

Second, the Court doubts that many of these proposed photographs and measurements would even help pin down the distances between objects. Take, again, the OC spray encounter. The video of the incident shows that an officer[1] inside reached over a makeshift barrier of signs and podiums and sprayed Egtvedt, who was standing outside of a broken window. But it is not clear where, exactly Mr. Egtvedt is standing. All that is clear is that he's somewhere outside the doors. Even if defense counsel were able to somehow calculate the distance from the officer's arm to the window—a dubious proposition—it would still not be obvious how far away the spray canister was from Mr. Egtvedt's eyes.

Third, Mr. Egtvedt already has many tools to establish the details of his path through the Captiol as or nearly as effectively as the requested photographs and measurements. The government has produced numerous videos and still photographs from Egtvedt's time in the Capitol. Those visual records include many obvious reference distances that could "unskew" the perspective of the videos—which, to be clear, does not seem all that skewed to the Court's eye. For example, the defense could point to the length of the officer's arm or the baton at the Senate Wing Doors, see Pl.'s Reply Fig. 1, or Mr. Egtvedt's height as he traversed the Hall of Columns. Egtvedt's counsel and his investigator have also visited all the areas in question twice. An investigator could easily testify to those distances based on her own estimates: how long it took her to walk between locations, how far she saw between columns, and so on. And again, it is not

---

[1] Mr. Egtvedt spends much of his reply in support of his motion to compel discussing the government's failure, so far, to identify the officer who sprayed him in the eyes. See Reply at 2–5. The defendant's request for the officer's identity, as well as the government's efforts to track him down so far, are the subject of a separate pre-trial motion. See Mot. Compel Identity, ECF No. 62. The Court recognizes that the defendant's inability to call the officer as a witness at trial does take away one alternate avenue for establishing how far away he was standing when he sprayed Egtvedt. But for all the reasons discussed here, taking various measurements around the Senate Wing Doors is neither a necessary nor a helpful substitute, to the extent the exact distance is even material at all.

clear that describing those distances in precise feet or inches—to the extent even possible—would aid the Court in finding any relevant fact. In sum, because he has not shown that the requested discovery would "significantly . . . alter the quantum of proof" on any material issue, Lloyd, 992 F.2d at 351, Egtvedt has not established that he is entitled to additional discovery under Rule 16(a)(1)(E).

Even if Egtvedt had met his materiality burden, there is "good cause" to preclude the requested discovery. Fed. R. Crim P. 16(d)(1). The government has established that allowing defense counsel to take new photographs and make public exact measurements of the interior of the Capitol building presents security concerns. According to Sean P. Gallagher, the Acting Assistant Chief for Uniformed Services for the U.S. Capitol Police, such photographs and measurements could make public "secret and highly-sensitive security features" in the Capitol building, including ones added since January 6th. Gallagher Decl. ¶¶ 1, 8. Exact measurements could be used by adversaries, in Assistant Chief Gallagher's view, to "calculate blast distances," navigate "a drone within the building," or evaluate "how large of a group could quickly pass through the hallways." Id. ¶ 9. In addition, Gallagher attests that allowing one-off additional tours beyond the ones USCP has already organized would tie up valuable public-safety resources. Id. ¶ 7. Egtvedt offers no response to these security concerns, which strike this Court as credible.

For the foregoing reasons, it is hereby

**ORDERED** that [84] Defendant's Motion to Compel Access to Non-Public Areas of the Capitol is denied without prejudice to renewal should it become clear that the discovery Egtvedt seeks is indeed necessary to the presentation of his defense.

**SO ORDERED**.

6

 

                                                        _____
                                                        CHRISTOPHER R. COOPER
                                                        United States District Judge

Date: September 12, 2022