**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**RYAN TAYLOR NICHOLS,**<br><br>*Defendant*. | **Case No. 21-cr-117-1(TFH)** |

### DEFENDANT RYAN NICHOLS' MOTION TO MODIFY RELEASE CONDITIONS

Ryan Taylor Nichols, through his attorney, Joseph D. McBride, Esq., respectfully requests that this Honorable Court modify its November 22, 2022, ORDER SETTING CONDITIONS OF RELEASE. (See ECF No. 180) Specifically, Mr. Nichols asks this Court to terminate the home incarceration, location monitoring, and internet restrictions from his release conditions and replace them with less restrictive ones. Undersigned counsel spoke with Pretrial Services Officer Harold Watson on Monday, May 24, 2023, regarding the abovementioned request. Mr. Watson said he has "no objections" to this request. Undersigned counsel also spoke with AUSA Douglas Brasher on May 31, 2023. Mr. Brasher stated that "the government is opposed" to Mr. Nichols' request. Mr. Nichols respectfully submits that this MOTION TO MODIFY RELEASE CONDITIONS should be granted over the government's objections. The following five reasons support the conclusion that Ryan Nichols will respect modified release conditions:

1. Mr. Nichols's history and characteristics before and after January 6, 2021.
2. Mr. Nichols' 200 days of supervised release without incident.
3. The great benefits to Mr. Nichols' physical and mental health.
4. The right to provide for his legal defense and family.
5. Alex Harkrider's stellar example of complying with modified release conditions.

1

I. MR. NICHOLS' PERSONAL HISTORY AND CHARACTERISTICS SUPPORT THE CONCLUSION HE WILL RESPECT MODIFIED RELEASE CONDITIONS.

Ryan Nichols, age 32, was born on December 6, 1990, in Rowlett, Texas. He is the son of Patti Nichols, a schoolteacher of 30+ years, and Don Nichols, a retired Marine and Baptist Pastor. Ryan is a husband to a remarkable wife named Bonnie and a father to two young sons: Ryan Jr. age nine, and Blake age six. Ryan's parents instilled in him the values of faith, family, fidelity, and service early on in life. It is, therefore, unsurprising that he has lived a life of compassion, honor, and public service. Ryan is beloved by his family, valued by church members, highly esteemed by his employees, and counted on by his friends. He is a decorated veteran, successful businessman, and homeowner with no criminal record or history of violence. He founded a nationally recognized search and rescue 501(c)(3) called Rescue the Universe, which specializes in rescuing humans and animals from natural disasters and other highly dangerous situations. Before January 6, 2021, Ryan spent most of his time running his business and being a devoted family man. He also spent approximately 50-75 days yearly doing search and rescue missions. During four years of active duty, the Marine Corps codified in him the values of service, tradition, fidelity, honor, responsibility, preparedness, and brotherhood. "Semper Fi" is the greeting and motivational expression that unites Marines of any age by reminding them of their code to be *Always Faithful* to God, their Country, and the Commander in Chief while also remembering to treat all veterans with compassion, dignity, and respect. These words carry a profound meaning for Ryan Nichols. Their utterance is akin to a sacred calling requiring him to make a difference in this world by living a life of leadership, self-sacrifice, excellence, and respect—exactly what he has always done.

This is demonstrated not just by Ryan's Honorable Military Discharge but by the fact that he is a decorated veteran who served overseas with distinction. Some of his accolades include the Marine Corps Good Conduct Medal; Global War on Terrorism Service Medal; Sea Service Deployment Ribbon; Expert Rifle Qualification Badge; and the National Defense Service Medal. Ryan no longer serves on active duty, yet he continues to serve the public, often at great personal risk. Each time he shakes his father's hand– he also shakes the hand of another Marine. Each time he travels into another dangerous search and rescue situation with fellow veteran Alex Harkrider– another Marine, is right beside him. *Always Faithful*— personified. Subtract January 6th from Ryan Nichols's life; what you have left over is a life of honor and service. After January 6th, you'll find a man who received five accommodations from the guards at DC-Jail and has since served 200 consecutive days of supervised release absent incident.

II. MR. NICHOLS' 200 DAYS OF SUPERVISED RELEASE WITHOUT INCIDENT SUPPORT THE CONCLUSION THAT HE WILL RESPECT MODIFIED RELEASE CONDITIONS.

Pretrial services in the Eastern District of Texas supervise Mr. Nichols. After 180 days of compliance in the EDTX, it is standard protocol for restrictions analogous to those imposed on Mr. Nichols to be lifted after a motion is filed and replaced by less restrictive ones. Options for less restrictive release conditions in the EDTX ensuring adequate supervision include curfews without location monitoring, check-in via FaceTime, and continued home visits. EDTX Pretrial Services Officer Murray directly supervises Mr. Nichols. Mrs. Murray is available by phone for questions and to testify, if necessary, as to Mr. Nichols's compliance with the conditions of his release.

### III. MR. NICHOLS'S PHYSICAL AND MENTAL HEALTH WILL GREATLY BENEFIT IF THIS MOTION IS GRANTED.

Ryan Nichols was documented with Post Traumatic Stress Disorder (PTSD) years before January 6, 2021. This notorious medical condition can lead to serious medical complications and death when not properly treated—especially for military veterans. After surrendering to the FBI on January 18, 2021, Mr. Nichols was incarcerated as a pretrial detainee for 674 days. During that time, undersigned counsel consistently argued that repeated exposure to serious psychological harm exasperated his pre-existing condition. This is evidenced by Mr. Nichols's many related grievances and the fact that he ended up on suicide watch in April of 2022. Undersigned counsel also argued that in addition to his psychological health failing, Mr. Nichols' physical health began to fail too. Although these issues were never fully resolved, they continue to affect him.

Mr. Nichols is also dealing with serious physiological problems that began to manifest during the pendency of his pretrial detainment but have now cascaded into something more detrimental to his health. For instance, Mr. Nichols, who is five foot and eight inches tall, weighed approximately 180 pounds on January 18, 2021. He was 210 pounds on November 22, 2022, when he was released. He is 250 pounds as of the day of this motion. Mr. Nichols has taken a multitude of tests since returning home. He has serious liver issues, low Testosterone and Vitamin D levels, and thyroid issues. 70 pounds heavier than he was in January of 2021, he has been forced into a sedentary lifestyle that is killing him. According to his physician: "It would greatly benefit Mr. Nichols if he would be able to access a better radius of activities away from his home in order to allow an increase in physical activities…the benefits of outdoor exposure, and better access to the ability to perform more physical exercise in order to reduce his long-term adverse risks associated with obesity and fatty liver disease, as well as being able to counteract adverse physical side effects of hypothyroidism." (See **EXHIBIT A** Letter from Mr. Nichols' physician, *Under Seal*)

4

IV.     MR. NICHOLS NEEDS TO WORK TO PROVIDE FOR HIS DEFENSE & FAMILY

Mr. Nichols has a constitutional right to participate in his defense meaningfully, which means that he has a right to work so that his defense can be funded. As this Honorable Court knows, the DOJ's prosecution of January 6th related cases is the biggest and most expensive in its history, and the corresponding federal funding allocated for the investigation and prosecution of these cases was previously unfathomable. As this Court also knows, regarding their socioeconomic class, the cohort of January 6th defendants range from the middle-class to the indigent. This is demonstrated by the portion of January 6th defendants represented by public defenders and other assigned counsel versus those who have hired private counsel. Importantly, in almost all cases where a private counsel has been hired, the defendants have appealed to the public for financial help for their legal defense. The logic is simple, in this David v Goliath battle, January 6th, Defendants have a right to raise money for stones and slingshots.

In an unprecedented move dripping with hatred and avarice, the DOJ has disgraced itself by weaponizing the fact that defendants have crowdfunded their legal defense funds. In case after case, the DOJ has calculated the exact amount a defendant has crowdfunded and then converted said amount into financial penalties for convicted January 6th defendants. This unconstitutional attack on a person's right to defend themselves against their accuser in court is abominable. It underscores that Mr. Nichols must work to provide for his legal defense and family.

Bonnie Nichols is Mr. Nichols' wife, 3rd party custodian, and partner in their family business, has confirmed that Ryan's presence at work is crucial, and his return to the office welcome as soon as possible. Ms. Nichols has also informed me that she will testify to why she believes returning to work will help Ryan combat his compounding and cascading medical issues and the hardship-based need for Ryan to return to work at the family business as soon as possible.

V.     <u>ALEX HARKRIDER'S SUCCESS WITH MODIFIED CONDITIONS IS A GOOD BAROMETER THAT MR. NICHOLS WILL LIKEWISE BE SUCCESSFUL.</u>

Ms. Kira Anne West is co-defendant Alex Harkrider's attorney. In June of 2021, Ms. West successfully argued for a change in Mr. Harkrider's release conditions a mere two months after Harkrider's April 2021 release. Mr. Harkrider and Mr. Nichols are Marine Corps veterans and best friends who have not been able to talk to each other since Harkrider's release from captivity in 2021. Nichols and Harkrider are also partners in the search and rescue world and have been working together for years to save human and animal lives. Therefore, it makes sense to use Harkrider's conduct on pretrial release to forecast Nichols's. Like Harkrider, Nichols poses no threat to the community, evidenced by his compliance with the combination of conditions since his release. Like Harkrider, the necessity of home incarceration and location monitoring is not necessary to ensure the safety of the community and Mr. Nichols' presence at trial.

<u>CONCLUSION</u>

The above facts prove that January 6th was an aberration in Ryan Nichols' life. Therefore, for the reasons stated above Mr. Nichols, through his attorney, Joseph D. McBride, Esq., respectfully requests that this Honorable Court modify his conditions of release.

Respectfully Submitted.

<u>/s/ Joseph D. McBride, Esq</u>
Joseph D. McBride, Esq.
Bar ID: NY0403
99 Park Avenue, 6th Floor
New York, NY 10016
e: jmcbride@mcbridelawnyc.com

**CERTIFICATE OF SERVICE**

I certify that on this 9th day of June 2023, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

/s/ Joseph D. McBride, Esq
Joseph D. McBride, Esq

6