UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**RYAN TAYLOR NICHOLS &**<br>**ALEX KIRK HARKRIDER,**<br><br>Defendants. | Case No. 1:21-cr-117 (RCL) |

**GOVERNMENT'S RESPONSE**
**TO THE ORDER OF THE COURT**

In response to the Court's August 31, 2023, order (ECF 254), the United States, by and through undersigned counsel, respectfully informs the Court that, to the best of the government's knowledge, it has provided all of the Capitol CCV footage that could have captured Defendant Ryan Nichols' (hereinafter, "the defendant") conduct on January 6, 2021.

In its order, the Court instructed the government to provide an affidavit from a person with knowledge of what video has been produced to the Department of Justice and to the defendant. Attached to this filing is an affidavit from Thomas A. DiBiase, General Counsel for the United States Capitol Police. *See* Exhibit A. Accompanying Mr. DiBiase's affidavit are four additional affidavits which he has provided in criminal and civil cases connected to the events of January 6, 2021. In the affidavit he has submitted for this case, Mr. DiBiase addresses the difference between the footage that has been provided to the U.S. Attorney's Office for the District of Columbia (which has been made available to the defendant with few exceptions), and the footage that was provided to certain congressional entities. As Mr. DiBiase's affidavit makes clear, the scope of video provided to these congressional entities included several days' worth of additional footage from the days and hours prior to the riot, several hours after the riot, and from buildings and areas that no rioters, including the defendant or his codefendant, breached or accessed on January 6,

2021. Mr. DiBiase's affidavit also references a Congressional entity's recently enacted policy which allows certain parties to review CCV footage related to January 6, 2021. The document outlining that policy is also attached to this filing. *See* Exhibit B. Upon receipt of footage outlined in ¶3 of Mr. DiBiase's affidavit, the Department of Justice began a review of the materials. From those 14,000 hours of raw footage, the Department removed any footage whose disclosure would present a security concern, such as that footage that the Capitol Police designated "security information" pursuant to 2 U.S.C. ¶ 1979, or that did not show rioters, such as—for example— footage from a separate Congressional office building that was never breached.

Based upon a thorough investigation into the defendant's particular conduct at the Capitol, the government believes that the defendant was only present on the West Front during the riot from approximately 2:30 p.m. to 6:00 p.m. The defendant's actions on the West Front during that time form the basis of the indictment in this case. Thus, all relevant and discoverable materials underpinning the defendant's actions on that date on the West Front of the Capitol have, upon information and belief, been provided to the defendant, through his counsel. The defendant, for his part, has not proffered any information that indicates that he was present in a different area or at a different time. As such, the government has made available every Capitol CCV camera in its possession that it has reason to believe *might* have captured the defendant's conduct on January 6. Based upon Mr. DiBiase's affidavit, there is simply no reason to believe that the defendant's conduct from January 6 would be captured on any other CCV camera, including any camera that was made available to congressional entities.

While the government agrees with the Court that the U.S. Capitol Police is a part of the prosecution team, *see* ECF No. 254 at 2, there is no basis, let alone constitutional duty, to search material unrelated to the crime at issue when doing so would represent an unwarranted, aimless

fishing expedition. The Court is absolutely correct that the government cannot "[stick] its head in the sand." *Id.* But, a prosecutor's affirmative duty to search for possible sources of exculpatory information must be tethered to whether the other sources of information could ever constitute *material* information that would tend to exculpate a defendant. *See, e.g.*, *United States v. Safavian*, 233 F.R.D. 12, at *16-17 (D.D.C. 2005) (holding that the duty extends to branches of government "closely aligned with the prosecution" where the files could potentially yield *Brady* information).

Here, after more than two years of investigation and the review of hundreds of hours of video from Capitol CCV, police body worn cameras, and open-source footage, the government has, to date, only found video footage that shows the defendant was present on the West Front of the United States Capitol on January 6, 2021, between approximately 2:30 p.m. and 6:00 p.m. in only two specific rooms or areas: the tunnel on the Lower West Terrace and ST-2M. Of these two areas, only the Lower West Terrace tunnel is covered by a Capitol CCV camera. The defendant's conduct at that time in that location forms the basis of the allegations against him in this case. In other words, outside of this context, there is absolutely no reason whatsoever to believe that the defendant will be found on videos, or as part of evidence gathered, in the thousands of other hours received by congressional entities. Instead, it appears that the defendant wants the government to expend significant pretrial hours reviewing irrelevant video, when it could otherwise be preparing for trial, or—in the alternative—provide a tranche of video that has yet to be provided to any defendant, under some theory that something captured on those thousands of hours of video may have some as yet unarticulated direct and meaningful connection to the prosecution here. The defendant's motion to compel fails to identify a single compelling basis for why such material must be disclosed. Given his insufficient proffer, and the strictures of the evidence that form the basis of the charges in this case, there is simply no reason to continue the fishing expedition.

**Government's Response to**
**Order of the Court—Page 3**

While the government is aware of its constitutional and statutory obligations, and willing to review all relevant documents to ensure the defendant's trial rights are safeguarded, his motion to compel must be denied. The government has met its discovery burden in this case.

## CONCLUSION

For the foregoing reasons, the defendant's motion and supplemental motion to compel discovery under *Brady v. Maryland* should be denied in full.

                                          Respectfully submitted,

                                          MATTHEW M. GRAVES
                                          United States Attorney
                                          D.C. Bar No. 481052

By:    *s/ Sean P. McCauley*
           SEAN P. McCAULEY
           Assistant United States Attorney
           New York Bar No. 5600523
           United States Attorney's Office
           For the District of Columbia
           601 D. Street, NW
           Washington, DC 20530
           Sean.McCauley@usdoj.gov

           DOUGLAS B. BRASHER
           Assistant United States Attorney
           Texas State Bar No. 24077601
           Federal Major Crimes – Detailee
           1100 Commerce Street, Third Floor
           Dallas, TX 75242
           douglas.brasher@usdoj.gov

           SARAH W. ROCHA
           Trial Attorney
           D.C. Bar No. 977497
           219 S. Dearborn Street, Fifth Floor
           Chicago, IL 60604
           sarah.wilsonrocha@usdoj.gov